HELEN MILLER BAKER *d.b.a.* C. W. MILLER COMPANY *vs.* MARYLAND CASUALTY COMPANY.

JANUARY 29, 1948.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

412

CONDON, J. This is an action of assumpsit on a liability insurance policy which was tried to a jury in the superior court. At the conclusion of the evidence each party moved for a directed verdict. The trial justice granted the plaintiff's motion and denied the defendant's. Defendant excepted to each ruling and has prosecuted its bill of exceptions to this court.

Those exceptions raise but a single issue, namely, whether the policy provided the plaintiff with coverage for an accident to a third person which occurred after she had completed or abandoned operations of cleaning a cesspool on the premises of such third person. Defendant insurer contends that the policy covered her liability to third persons only for accidents at plaintiff's place of business or at any other place during the time she was actually carrying on the operations of her business thereon and not subsequently. On the other hand, plaintiff contends that so long as the accident was alleged to be due to the manner in which she conducted her operations she is covered by the policy, regardless of the fact that the accident is alleged to have occurred after she had ceased operations on the premises.

Plaintiff, under the name of C. W. Miller Company, carried on the business of cleaning cesspools and in the course thereof, from the very nature of such business, it was necessary to conduct operations on the premises of other persons. On March 17, 1944 plaintiff cleaned the cesspool on certain premises on Edgewood Boulevard, in the city of Cranston, Rhode Island, belonging to Eli and Pearl Winkler, husband and wife. Later, on March 24, 1944, as part of that job, she delivered to those premises a hundred-pound carboy of acid which was poured by her employees into an overflow cesspool from which a cover was removed and immediately thereafter replaced. Thereupon said employees left the premises and no further operations of any kind in connection with the cleaning of the cesspool were conducted by the plaintiff on the premises, nor were any tools or materials belonging to her and used in that cleaning operation left thereon.

On October 5, 1944 the Winklers brought actions against the plaintiff in which they alleged that the cesspool cover was so negligently and carelessly replaced that it was rendered unsafe to walk upon and as a result thereof Pearl Winkler, in April 1944, fell into the cesspool and was severely injured. When plaintiff was first apprised of the claims of the Winklers, and later when she was served with their writs, she referred such claims and writs to the defendant in the case at bar in reliance upon an insurance policy under which the defendant, in certain circumstances therein set forth, was obligated to defend her. However, in the circumstances alleged in the Winklers' actions, defendant on October 19, 1944 disclaimed such obligation and as a result plaintiff was forced to retain counsel at her own expense to defend her. Subsequently on the trial of those actions the Winklers were adjudged nonsuit, and thereafter plaintiff brought the instant action against the defendant for reimbursement of the expense to which she was put in defending such actions, which she claims was the defendant's obligation under the policy that it had issued to her.

Plaintiff's policy was issued by the defendant on December 7, 1943 for a period of one year and is entitled "Contractors' Schedule Liability Policy." The policy contains the declaration that the premises covered are "1 Hodsell Street, Auburn, Cranston, R. I." and the operations are "Cesspool Cleaning classified as: Sewer Cleaning." Defendant conceded at the trial in the superior court that such declaration included cesspool cleaning on premises other than 1 Hodsell street as long as the insured was actually conducting such operations on other premises.

The policy also contains among six definitions of hazards the following: "Division 1. Premises-Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto. . . . Division 3. Products. The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured; and operations covered under divisions 1 and 6 of the Definition of Hazards (other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials) if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises."

It appears from the policy that only division 1 of those hazards is covered by the specific premium charge which insured paid for the policy. And that is the only hazard under "Purposes of Use" in the policy which is underwritten and such purpose is "Cesspool Cleaning." That hazard as defined in the policy under "Division 1. Premises-Operations" is "The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

The policy further provides under "Exclusions": "This policy does not apply: . . . (d) under divisions 1 and 6 of

the Definition of Hazard, to liability with respect to which insurance is or can be afforded under division 3 of the Definition of Hazards"; and under division 3, as quoted above, it appears that operations covered under division 1 (other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials) do not include an accident which occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from the insured's premises, as such coverage may be obtained under division 3 on payment of a specific premium charge therefor.

The above provisions when read together disclose that the insurer has assumed the obligation to defend the insured against accidents within the scope of division 1 of the definitions of hazards in consideration of the specific premium charged therefor, but not against accidents within the scope of division 3 for which a separate specific premium charge is provided. The policy also provides that liability for the defense of the insured for an accident which occurs after operations away from the insured's premises have been either "completed or abandoned" is a coverage available under division 3 and is therefore not included under division 1. Since the insured is covered only under division 1, it necessarily follows that if the alleged accident to Mrs. Winkler occurred on her premises, after the insured's operations thereon had been "completed or abandoned" there would be no obligation upon the defendant, under the policy, to defend the Winkler actions against the plaintiff.

Plaintiff contends that if she had negligently performed her work on the Winklers' premises and such negligence had caused an injury during the period the policy was in effect, her work would not have been *completed* within the meaning of that word as used in the policy and, therefore, the exclusionary provision of division 3 would not apply. She further argues that the fact that the Winklers were ultimately nonsuited does not weaken that contention and does not absolve defendant from its obligation, under the

policy, to defend the actions the Winklers had brought against her, since their allegations that she had negligently performed the work on their premises was tantamount to a claim on their part that the work was not *completed*. Plaintiff contends that defendant was obligated to defend such a claim, even though groundless.

In support of that contention she cites *Daniel* v. *New Amsterdam Casualty Co.*, 221 N. C. 75. We have examined that case and do not consider that it is applicable to the facts of the case at bar. The policy here definitely excludes coverage for accidents occurring after the plaintiff had "completed or abandoned" her work on the Winklers' premises. It is manifest from the evidence that plaintiff herself considered, at least before litigating the instant case, that she had completed her work there after her employees had left the premises on March 24, 1944. Whether she had completed her work to the satisfaction of the Winklers so as to be entitled to payment therefor is of no importance in this litigation. For the purpose of this case we have to consider only whether the plaintiff had completed her work on March 24, 1944, and had actually discontinued all further operations on the Winklers' premises after that date.

Under the exclusionary provision of division 3 of the policy an accident occurring after the premises are abandoned is not covered by division 1. There can be no question that plaintiff *abandoned* operations on the Winklers' premises after she had satisfied herself on March 24, 1944 that no further operations on her part were required to complete the work which she had contracted to do on such premises. The evidence on that question is undisputed. An accident occurring after that date would therefore not fall within the plaintiff's contract of insurance.

The defendant's exceptions to the rulings of the trial justice granting plaintiff's motion for a directed verdict and denying defendant's are sustained. The plaintiff may appear before this court on February 11, 1948, to show cause, if any she has, why the case should not be remitted

to the superior court with direction to enter judgment for the defendant.

*Voigt, Wright & Slade, Ernst T. Voigt, Edward J. Plunkett,* for plaintiff.

*William A. Gunning,* for defendant.