**SOUTHWESTERN INDEMNITY COM-PANY and Service Mutual Insurance Company, Appellants,**

v.

**NATIONAL SURETY CORPORATION,**
Appellee.

No. 17956.

United States Court of Appeals
Fifth Circuit.

April 13, 1960.

David B. Kultgen, Waco, Tex., Scott Talbert, Houston, Tex., Beard, Kultgen & Beard, Waco, Tex., for appellants.

B. Jeff Crane, Jr., Vinson, Elkins, Weems & Searls, Houston, for appellee.

Before RIVES, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

RIVES, Chief Judge.

National[1] sued Southwestern and Service Mutual[2] to recover one-half of the amount expended by National to investigate, defend and settle two personal injury cases against Schwope Brothers. National claimed that Service Mutual had issued a policy of liability insurance to Schwope Brothers which covered these personal injury claims in an amount the same as National. Southwestern and Service Mutual denied liability and counterclaimed for one-half of their expenses in investigating the personal injury suits. The district court rendered judgment granting each of the parties the affirmative relief sought against the other, from which judgment Southwestern and Service Mutual appealed.

Duncan H. Hadley and W. A. Beard were injured when their automobile collided with a Schwope Brothers fuel truck parked on the shoulder of a highway where it was fueling a road grader. Schwope was engaged in rebuilding the highway under a contract with the State of Texas. The road was open to the public for travel. The fuel truck was covered by a National standard automobile liability policy. Also in effect was a "premises-operations" liability policy issued by Service Mutual to Schwope Brothers. In the declarations made a part of that policy is found a description of hazards which refer to the operations to be performed by Schwope Brothers and which would clearly include the rebuilding of the highway in question.

Hadley and Beard sued Schwope Brothers, and Schwope notified both National and Service Mutual of the claims and called upon them to defend. Each company investigated the claims. Service Mutual refused to proceed further. National answered the complaints and finally settled the claims. Each company incurred expense in connection with its investigation, and National incurred legal expenses in defending and settling the claims.

The insuring clause of National's policy reads as follows:

"National Surety Corporation * * * agrees with the insured * * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile."

The insuring clause of the Service Mutual policy reads as follows:

"The Service Mutual Insurance Company of Texas * * * agrees with the insured, * * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

Both the Service Mutual and the National policies were in like amounts, and contained "other insurance" clauses which were not significantly different. We quote the "other insurance" clause contained in the Service Mutual policy.

---

1. For convenience, we will refer to the appellee as National and to the appellants as Southwestern and Service Mutual.

2. Southwestern is the successor of Service Mutual and has assumed its liabilities.

"If the Insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Service Mutual's defense was predicated upon the following exclusionary provision contained in its policy:

"*This policy does not apply:*

\* \* \* \* \* \*

"(b) \* \* \* to watercraft while away from premises owned, rented or controlled by the Named Insured, automobiles while away from such premises or the ways immediately adjoining, or aircraft, or the loading or unloading thereof."

■ It is conceded that the word "automobiles" as defined in the Service Mutual policy included the fuel truck. The primary issue is whether the highway upon which the collision occurred was "owned, rented or controlled" by Schwope Brothers. Clearly, Schwope Brothers neither owned nor rented the highway, and the question is therefore reduced to "controlled."

The contract between Schwope Brothers and the State of Texas, under which Schwope Brothers was engaged in rebuilding the highway, contained the following provisions:

"Until the acceptance of the work by the Engineer, as evidenced in writing, it shall be under the charge and care of the contractor. The contractor shall rebuild and make good at his own expense all injuries and damages to the work occurring before its completion and acceptance. In case of suspension of the work for any cause, the contractor shall be responsible for the preservation of all material. He shall provide suitable drainage of the roadway and shall erect temporary structures where required.

"The contractor shall maintain the roadway in good and passable condition until final acceptance. Wherever in the opinion of the Engineer any roadway or portion thereof is in suitable condition for travel, it shall be open to the traffic, as may be directed, and such opening shall not be held to be in any way an acceptance of the roadway or any part of it or as a waiver of the provisions of the contract. Repairs or renewals made upon the roadway, due to its being opened to travel under instructions from the Engineer, to defective materials or work, to natural causes, to ordinary wear and tear, or otherwise, pending completion and acceptance of the work, shall be performed at the expense of the contractor."

A very similar question was passed on by the Supreme Court of Texas on December 9, 1959, in its opinion in American Fidelity & Casualty Co. v. Traders & General Ins. Co., 334 S.W.2d 772. In that case, Traders & General had issued to Mizell Truck Line a comprehensive general bodily injury and property damage liability policy similar to Service Mutual's policy here involved. American Fidelity & Casualty Co. had issued to Mizell Truck Line practically the same form of automobile liability policy issued to Schwope Brothers by National in this case. At the time of the accident which gave rise to the litigation, Mizell Truck Line's truck, specifically covered by the automobile liability policy, was engaged in "rigging down" an oil drilling rig on an oil lease which Mizell Truck Line did not own or rent. The drilling rig belonged to Mizell but was under lease to Peters Drilling Company. James Edward Duff, an employee of Peters, recovered judgment against Mizell for $34,000 damages for personal injuries. Further facts were stated in the opinion of the Texas Supreme Court as follows:

"\* \* \* Duff's injuries occurred while a drilling rig was being 'rigged down,' or dismantled, by a Mizell crew on a lease owned by the Peters Drilling Company in Montgomery

County. Two of Mizell's trucks were being used, a tandem and a winch truck, under the supervision of Roy Mizell, Leonard Mizell's brother. Duff was an employee of Peters, and with other employees of Peters, was involved in the 'rigging down' operation. Peters' employees were engaged in the dismantling of the rig, while Mizell's employees moved the various component parts from the sub-structure of the rig to other locations on the drilling site and stacked them there for future use. The rig belonged to Mizell but was under lease to Peters. All of the activities other than the mechanical dismantling of the rig itself were under the direction of Roy Mizell. He determined how the trucks were to be used, where the components of the rig were to be stacked, and supervised both the loading and unloading of the trucks."

After thus stating the facts, the Supreme Court of Texas said:

"We have concluded that such authority fulfills the requirement of 'control' over the premises as provided for in the policy. There is no case which we regard as being directly in point, but support is afforded our conclusion by the opinion in Pacific Employers Insurance Co. v. Hartford Accident & Indemnity Co., 9 Cir., 228 F.2d 365. Accord: Bates v. Connecticut Power Co., 130 Conn. 256, 33 A.2d 342; John G. Speirs & Co. v. Underwriters at Lloyds, London, 84 Cal.App.2d 603, 191 P. 2d 124."

Southwestern and Service Mutual insist that that case is distinguishable and that the State rather than Schwope controlled the premises where the collision occurred.[3] This case, however, does not involve any question of right of control as between the State or its highway engineer and Schwope. Southwestern and Service Mutual further contend that Schwope lost his control over the highway by leaving the fuel truck parked there after dark contrary to a contractual provision. Clearly, however, Schwope's own wrongful conduct did not operate to relieve him of liability. Finally, they insist that the rule of *ejusdem generis* would require that "controlled" be construed in connection with the words "owned" and "rented" to mean dominion similar to that exercised by an owner or a leaseholder. That insistence is precluded by the decision of the Texas Supreme Court in the American Fidelity & Casualty Co. case, supra.

We conclude that Service Mutual's policy obligated it to pay on behalf of Schwope Brothers the damages for which Schwope became legally obligated for bodily injuries suffered by Hadley and Beard.[4]

Southwestern and Service Mutual further contend, however, that, regardless of the question of control or of coverage under the Service Mutual policy, National cannot recover one-half the amount paid by it to settle the Hadley and Beard claims, nor one-half the amount spent by it in investigating and defending those claims, in the light of an opinion of the Supreme Court of Texas in Traders & General Ins. Co. v. Hicks Rubber Co., 1943, 140 Tex. 586, 169 S.

3. Article 7.7 of the contract in part provides:
"The contractor shall cooperate with the Engineer (i. e., the State Highway Engineer) in the regulation of traffic * * *. Only such portions of the highway may be closed to traffic as may be directed by the engineer * * *. If in the opinion of the engineer the above requirements are not complied with, the engineer may do such work as may be

necessary and charge the cost to the contractor."
Paragraph 10 of the special provisions at the end of the contract provides that the "sequence of work shall be as directed or approved by the engineer."

4. It was stipulated: "That the amounts expended by parties in the defense, settlement and investigation of the aforesaid claims are reasonable and necessary."

W.2d 142. The district court considered that case inapplicable, stating in its memorandum opinion: "A careful reading of this case will disclose that coverage therein was not the same as in the instant case and it is, therefore, not applicable." In that case, one insurer had made no payment on the other insurer's liability, but it was the insured itself which had made such payment, and judgment was awarded in favor of the insured against the insurer which had denied liability.

In the instant case, if National had paid only its proportionate part, leaving the remainder to be paid by the insured Schwope Brothers, Southwestern and Service Mutual would clearly have been liable to Schwope Brothers for such remainder. National's policy provided in part as follows:

"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights."

Neither contractual nor conventional rights of subrogation were considered by the Supreme Court of Texas in the Hicks Rubber Co. case, supra. See, however, Associated Indemnity Corp. v. National Surety Corp., Tex.Civ.App.1956, 287 S. W.2d 714; Commercial Standard Ins. Co. v. American Employers Ins. Co., 6 Cir., 1954, 209 F.2d 60; Clow v. National Indemnity Co., Wash.1959, 339 P. 2d 82; United States Guarantee Co. v. Liberty Mutual Ins. Co., 1943, 244 Wis. 317, 12 N.W.2d 59, 61, 150 A.L.R. 632. National could not well settle the Hadley and Beard claims piecemeal. It was not a mere volunteer in paying more than its proportionate part of the liability. That excess was paid on behalf of the insured Schwope, and National became subrogated to Schwope's right against Southwestern and Service Mutual.

Similarly, when Service Mutual wrongfully failed to proceed further with the investigation of the claims of Hadley and Beard and to defend against their actions, it became liable for such sums as might have been expended in good faith by Schwope Brothers in further investigation, defense and settlement, including reasonable expenses and attorneys' fees incurred in connection therewith. Boutwell v. Employers' Liability Assurance Corp., 5 Cir., 1949, 175 F.2d 597, 598. National, being subrogated to the rights of Schwope Brothers to the extent that National was not itself liable, is now entitled to recover for one-half of what it spent in investigating and defending the claims. If any error was committed by the district court, it was in allowing Southwestern and Service Mutual an offset for one-half of their investigation expense, but National does not complain of that error.

The judgment of the district court is Affirmed.