John P. McNALLY and Tom McNally, d/b/a McNally Elevator Service Company, Plaintiffs-Appellees,

v.

AMERICAN STATES INSURANCE COMPANY, Defendant-Appellant.

No. 14762.

United States Court of Appeals
Sixth Circuit.

Sept. 28, 1962.

Weick, J., dissented.

Robert E. Sullivan, Detroit, Mich., Hand, Sullivan, Kiefer & Allen, Robert E. Sullivan, Detroit, Mich., on the brief, for appellant.

William L. Fisher, St. Clair Shores, Mich., William L. Fisher, St. Clair Shores, Mich., on the brief, for appellee.

Before WEICK and O'SULLIVAN, Circuit Judges, and DARR, Senior District Judge.

O'SULLIVAN, Circuit Judge.

Defendant-Appellant, American States Insurance Company, appeals from a judgment declaring that its policy of liability insurance in which Plaintiffs-Appellees, John P. McNally and Tom McNally, d/b/a McNally Elevator Service Company, (referred to herein as the McNallys) are the named insureds, covered the liability charged against the McNallys in a suit against them in the Circuit Court of Kalamazoo County, Michigan. On February 13, 1957, while the policy was in force, plaintiff in the Kalamazoo County action was injured when an elevator in the Burdick Hotel at Kalamazoo, Michigan, in which he was a passenger, fell. His declaration charged, inter alia, that the elevator fell as a consequence of the negligent failure of the McNallys to properly inspect and maintain such elevator in a safe working condition, as they were required to do under an inspection and maintenance contract between the McNallys and the Burdick Hotel Company. At the time of the accident, neither of the McNallys nor any of their employees was on the Burdick Hotel premises. Defendant's position is that its policy covered only such accidents as might occur while one of the McNallys or their employees was physically present at the place of, and engaged in the performance of work on, such elevator. The cause was tried to the District Judge without a jury.

On October 21, 1955, the McNallys entered into a contract with the Burdick Hotel Company to furnish that concern with what was called "McNally Maintenance" of elevators located in the hotel. By this contract, the McNallys were under a continuing obligation to use all reasonable care to maintain the elevator equipment in the Burdick Hotel in proper and safe working condition. They were required to regularly and systematically examine, adjust and lubricate as required, and where conditions warranted, repair and replace the machine, motor, generator and controller parts. Periodic examinations of all safety devices were required. It was testified that performance of the contract required not less than weekly visits to the elevator premises, and the McNallys were to respond to emergency calls, if needed. The McNallys had established a system whereby they would inspect part of the elevator equipment one week and another part on the following week; one week they would go over the controls, the machine, the brakes and everything up in the penthouse; the following week they would go down the elevator's hatch and go over the locks, the limit switches, slack cable devices, car shoe gibs and inspect the safety situation under the car. Some time prior to the accident, the McNallys were experiencing trouble with the rotor in the elevator in question. Temporary repairs were made to it while the McNallys were in the process of locating another rotor to replace it. The Burdick Hotel elevators were fifty-one years old, and replacement parts were not readily available. The McNally contract with the hotel was a yearly one with an automatic renewal provision and was in force on the day of the accident.

Notified of the accident and the suit brought thereon, defendant American States Insurance Company refused to defend. The question before the District Court was whether the McNallys' liability, if any, to the person injured by the fall of the elevator was a hazard coming within the clear meaning of that part of defendant's policy entitled "Products—Completed Operations." The McNallys did not buy such coverage, and such coverage was excluded from that part of the policy entitled "Premises—Operations" which the McNallys did buy. We think it fair to say that defendant concedes that the coverage "Premises—Operations" would, but for defendant's claim of exclusion, cover the liability charged against the McNallys by the injured elevator passenger.

The McNallys, father and son, formed their elevator service company in 1955.

They operated out of the father's home in Kalamazoo. Their business is to inspect, service and maintain elevators under written contracts with the owners thereof. They maintain no inventory of parts, but acquire parts as they are needed. In October of 1956 one of the McNallys talked to the Kalamazoo representative of defendant insurance company concerning their desire for liability coverage appropriate to their operation. Their method of doing business was made known to the agent. The agent was told that the McNallys wanted coverage "so that they would be covered if sued for anything that might happen, and that they wanted all the protection they could get for the least money." There was discussion of "products liability" coverage, but the McNallys informed defendant's agent that they did not manufacture any products, and defendant's agent told them that they did not need products insurance. The policy involved was written as a result of such negotiations, and unless limited as claimed by defendant, insured the McNallys against liability for accidents arising from their "ownership, maintenance or use of premises *and all operations.*"

The front page of the policy identifies plaintiffs as *"John P. and Tom McNally DBA McNally Elevator Service."* Their business is described as *"elevator service."* In Item 3, the limits of liability of coverages A (Bodily Injury Liability) and B (Property Damage Liability) are set forth. Item 3 also says that *"the insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges."* Item 4, is entitled in bold type *"Description of Hazards."* Beneath this and also as part of Item 4 is another bold type heading, *"Division 1. Premises-Operations,"* followed in smaller type by the words, *"Purposes of Use—Classification and Code."* Then follows specific identification (typewriting) of McNallys' operation as *"Elevator Inspecting* No. 2475" and *"Elevator erection or repair including incidental operation of elevators for*

*testing purposes* No. 5160." The premium charged for each coverage is typed opposite the described coverage.

We are persuaded that from the above contents of the first page, it would be a reasonable conclusion that the McNallys had purchased insurance protecting them from all liability arising out of work done in the performance of their contract to inspect and maintain the elevators in the Kalamazoo Hotel. For its contention that the only coverage provided was for events occurring while one of the McNallys or their employees was physically present at the location of, and working on, an elevator, defendant relies upon what is contained in the fine print on the second page of the policy.

At the top of the second page there is a large type heading *"Insuring Agreements"* followed by a recital that the company agrees to pay all sums that the insured may become liable to pay for bodily injury or property damage caused by accident "arising out of the hazards hereinafter defined." The *"Definition of Hazards"* section includes the following:

> *"Division 1—Premises—Operations.* The ownership, maintenance or use of premises, *and all operations."* (Last italics provided.)

Since this is the hazard against which the McNallys sought to be insured, and inasmuch as their operations were, on the first page, described as elevator inspection and repair, the McNallys would be justified in assuming that they had purchased their needed protection. Defendant seems not to question this. It says, however, that Division 1 must be read in connection with Division 4 of the Definitions of Hazards, which by its title covered *"Products—Completed Operations,"* (a hazard which the McNallys didn't buy). The following is the full style and context of Division 4:

> *"Division 4—Products—Completed Operations.* (1) Goods or products manufactured, sold, handled, or distributed by the named insured or by others trading under his name, if the accident occurs after posses-

:sion of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph; (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured; (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of item 4 of the declaration specifically includes completed operations."

Defendant asserts that had the McNallys read the above, they would find that subsection (2) of Division 4 (which they didn't buy) describes, with more particularity than Division 1, (which they did buy) McNallys' liability for accidents resulting from their failure to properly inspect or maintain the elevators and which accidents occurred in the intervals between their weekly visits to the Burdick Hotel.

In the District Court, the main thrust of defendant's argument was that even though under *"Division 1—Premises— Operations,"* the McNallys were covered, this coverage was lost to them because they didn't buy the kind of coverage provided by *"Division 4—Products— Completed Operations,"* which division, in subsection (2), allegedly better described "the operations" for which the McNallys were sued. In this court, however, defendant places chief reliance on the *Exclusions* part of the policy. There it is provided (in small print):

"This policy does not apply: * * (c) under division 1 of the Definition of Hazards to * * * or (2) the Products—Completed Operations Hazard."

In support of its claim of exclusion, defendant asserts that subsection (2) of Division 4, which division is entitled *"Products—Completed Operations,"* must be read so that the caption word "Products" in no way qualifies "Completed Operations" or subsection (2) which relates to completed operations; that subsection (2) of Division 4 must be read as being completely independent of the caption word "Products"; that each time the McNally people left the elevators at the Burdick Hotel, following their regular servicing of them, their operations became "completed operations" and the McNallys' insurance coverage was suspended until they returned again and resumed work on the elevators. The fact that McNallys' contract obligation to inspect and maintain the elevators was a continuing one did not, defendant says, prevent each visit to the elevators being a completed operation. For this, defendant relies on subsection (2) which says that "operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement."

In giving judgment that defendant's policy did provide coverage for the liability asserted against the McNallys, the District Judge found that the terms of

such policy were ambiguous. The validity of his conclusion in this regard is, in part, supported by the fact that the McNallys and American States both employed opinions of expert witnesses to support their opposing contentions as to the policy's meaning and intendment. The admissibility of such expert opinions to aid construction of the policy is not involved on this appeal. The District Judge's construction of the policy was that Division 4, "Products—Completed Operations" should, in the context of the case, be read as providing "products liability" coverage, a coverage not applicable to the McNallys' business. Its exclusion, therefore, had no effect on the McNally coverage. He further found that the McNallys' operations at the Burdick Hotel remained incomplete during the continued performance of the service contract and were not "completed operations" so as to be excluded from coverage.[1]

We are of the opinion that the District Judge committed no error in concluding that, under the facts of the case and considering the intentions that the parties sought to express in the policy before us, Division 4 "Products—Completed Operations" could well be understood and construed as relating to "products liability." Supportive of this view are the following observations:

(a) Experts, each expressing eminent qualifications in construing terminology used in insurance policies, gave directly opposing opinions as to the meaning of Division 4. Plaintiffs' expert said that the McNallys' coverage for the liability involved was not affected by the exclusion of Division 4. Defendant's experts disagreed. Illustrative of the difficulty that attended an understanding and construction of the insurance contract involved is the fact that the trial of this case developed some 293 pages of transcript made up of the testimony and arguments devoted to telling the District Judge what the policy meant.

(b) On the front of the policy, where space is provided for fixing the premium for Division 4 coverage, the basis of the premium is given as "Sales—Per $1,000 Sales." The word "Sales" is later defined as " * * * money charged * * * for all goods and products sold * * * and charged * * * for installation, servicing or repair * * *." Certainly a fair reading of this would relate the charges for installation, etc., to goods and products sold.

(c) That Division 4 was products liability coverage is further supported by subdivision (f) of the exclusions which says that the policy does not apply "under division 4 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement except a warranty of *goods or products*." Further, in item 6 of Conditions, it is provided that "under division 4 of the Definition of Hazards all damages arising out of one lot of *goods or products* * * * shall be considered as arising out of one accident." In the exclusion clause, Division 4 is referred to singularly as "the Products—Completed Operations Hazard."

(d) Opposing defendant's contention that the words "Products—Completed Operations" relate to distinct and independent subjects, is the undisputed fact that the coverage of Division 4 with its subdivisions (1) and (2) is always written as a unit; coverage under (2) cannot be obtained independently of subdivision (1). If, after painstaking study of Division 4, the McNallys decided that they should have subsection (2) which defendant claims they needed, although

---

1. Conclusions of Law 6 and 7 of the District Judge are:

6. The exclusionary provision (c) (2) of the policy cannot be interpreted as having any application to the hazards against which plaintiffs are insured for the reason that it makes specific reference to "the Products—Completed Operations Hazard," and the plaintiffs here were not engaged in a business involving products. Their business was service.

7. Division 4 (Products—Completed Operations) hazard is meaningless when attempt is made to apply it to plaintiffs' operations which remained *incomplete* for the life of the service contract they had with the Burdick Hotel.

not requiring subsection (1), which relates to products, they just couldn't get it as a separate coverage. If, to be sure of adequate coverage, they decided to buy all that Division 4 provides, their premium would be based on sales, of which they had none, or upon installation, service or repair of products which they did not handle.

(e) It was undenied that coverage No. 2475 "Elevator Inspecting" and coverage No. 5160 "Elevator erecting or repairing, including incidental operation of elevators for testing purposes" are, with the exception of a classification entitled "elevator or escalator manufacture," the only classifications relating to elevators in the rate manual of the Bureau of Casualty Underwriters. Accordingly, the McNallys purchased whatever standard classifications that could have any relationship to their business. We may assume that defendant's agent selected for them the classification which he considered appropriate to their enterprise.

(f) We are not persuaded that the average businessman would be unreasonable or lacking in understanding in assuming that the caption phrase "Products—Completed Operations" related to the subject of products liability and that the subdivisions thereof were both germane to such subject. In any event, we are of the opinion that the District Judge was justified in finding ambiguity in the phrase and resolving it against the phrase's author.[2]

Much litigation has involved the efforts of courts to find clear meaning in somewhat similar phraseology. See Butler v. United States Fidelity & Guaranty Co., 197 Tenn. 614, 277 S.W.2d 348 (1955);

Foster Trailer Co. v. United States Fidelity & Guaranty Co., 190 Tenn. 181, 228 S.W.2d 107 (1950); Baker v. Maryland Casualty Co., 73 R.I. 411, 56 A.2d 920 (1948); Standard Acc. Ins. Co. v. Roberts, 132 F.2d 794 (C.A. 8, 1942); Berger Bros. Electric Motors v. New Amsterdam Cas. Co., 293 N.Y. 523, 58 N.E.2d 717 (1944); Hutchinson Gas Co. v. Phoenix Indemnity Co., 206 Minn. 257, 288 N.W. 847 (1939); McAllister v. Century Indemnity Co. of Hartford, 11 N.J. 611, 94 A.2d 345 (1953); King v. Mason (La.App.), 95 So.2d 705; affirmed King v. Mason, 234 La. 299, 99 So.2d 117 (1958); Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958); Hercules Co. v. Royal Indemnity Co., 171 F.Supp. 746 (S.D.N.Y., 1959); Reed Roller Bit Co. v. Pacific Employers Ins. Co., 198 F.2d 1 (C.A. 5, 1952); Heyward v. American Casualty Co. of Reading, Pa., 129 F.Supp. 4 (E.D.S.C., 1955); Clark v. Hacker, 345 Mich. 751, 76 N.W.2d 806; Nielson v. Travelers Indemnity Co., 174 F.Supp. 648, (D.C.) affirmed Travelers Indemnity Co. v. Nielson, 277 F.2d 455 (C.A. 8, 1960). We respectfully disagree with the holdings of some of the above cases, while agreeing with others. Their large number, however, emphasizes the difficulty which attends construction of this type of policy. It is significant that in the following cases insurance companies, by their own authorship, included under the general title of "Products," descriptions of "operations" or "completed operations" in language either identical or substantially similar to what is found in subsection (2) of Division 4 in the policy before us. Baker v. Maryland Casualty Co., supra; Tidewater Associated Oil Co. v. Northwest Casualty Co., 264 F.2d 879

2. The following colloquy is illustrative of how the title "Products—Completed Operations" can very reasonably be read:

"The Court: Well, there seems to be some ambiguity here in relation to what type of coverage this insurance policy provides. Your contention is that the policy has no application to the subject matter—no coverage for the subject matter of the Circuit Court action.

"Mr. Sullivan: Yes, your Honor.

"The Court: On the theory he didn't have products insurance.

"Mr. Sullivan: Not products, your Honor. Completed operations.

"The Court: One goes along with the other. You can't separate it, because the policy doesn't separate it. It is 'Products—Completed Operations' Division 4. Now, those are certainly contiguous to each other, and you can't talk about one without talking about the other, in my opinion."

(C.A. 9, 1959); McAllister v. Century Indemnity Co. of Hartford, supra; King v. Mason, supra; Kendrick v. Mason, supra; Hercules Co. v. Royal Indemnity Co., supra; Reed Roller Bit Co. v. Pacific Employers Ins. Co., supra; Heyward v. American Casualty Co. of Reading, supra; Nielson v. Travelers Indemnity Co., supra; Lloyds Casualty Insurer v. Mc-Crary, 149 Tex. 172, 229 S.W.2d 605. If then, draftsmen employed by the great names of the insurance business, by their own use of language, assume that "operations" and "completed operations" are a part of the "products liability" hazard, how can the McNallys or other businessmen be criticized for being of the same mind.

(g) We find nothing in semantics, grammar, rhetoric or syntax compelling a businessman, or trial or appellate court, to conclude that the words "Products—Completed Operations" found together (separated by a dash or hyphen) in a title, should be read as wholly unrelated; or in this case, that subdivision (2) is related only to one of the words of the caption and in no way limited by the other. It would not have required extraordinary skill for the authors of this policy to clearly express the meaning they asked the District Court and now ask us to find in their contract. It is significant that in this policy the words "Products" and "Completed Operations" were not separated by either a conjunctive "and" or the disjunctive "or." Purists in punctuation might assert also that if subdivisions (1) and (2) were unrelated, a period instead of a semicolon should have divided them.

We will not find error either in the District Judge's conclusion that the services performed by the McNallys did not end after each weekly inspection, and thereupon become "completed operations." The language of subdivision (2) which says that operations shall not "be deemed incomplete * * * because further operations *may* be required pursuant to an agreement" does not make that which is incomplete in fact, complete. A fair interpretation of the in-

tendment of such language was merely to provide that that which was, in fact, complete, would not be made incomplete because a further operation *may* be required, such as, for illustration, an obligation of the installer of a furnace to readjust it at the end of a stated period, if required by the purchaser. It has been held that work will not be considered complete because workmen have suspended operations and left the premises. Lloyds Casualty Insurer v. McCrary, 149 Tex. 172, 229 S.W.2d 605, 609 (1950); Connecticut Co. v. Mongillo, 144 Conn. 200, 128 A.2d 528 (1957). In this view of "completed operations," Division 4 does not apply as an exclusion, even if we indulge defendant's claim that the caption words "Completed Operations" and subdivision (2) of Division 4 are to be read as unrelated to "products liability."

The McNallys assert that further support for their claim that their operations are not such "operations" as are described in Division 4, subsection (2), is found in the language of such subdivision where it says that the "operations" there referred to are covered "if such accident occurs * * * *away* from premises * * * *controlled* by the named insured." Plaintiffs say that the elevator premises involved here were, under the McNally service contract, "controlled" by them and, therefore, the accident did not occur away from premises "controlled" by the named insured." cf. Southwestern Indemnity Co. v. National Surety Corp., 277 F.2d 545 (C.A. 5, 1960).

Further attempts to provide exposition of our problem will not likely clarify what may already be confusing to the reader of this opinion. We borrow the words of Judge Schnackenberg of the 7th Circuit [Ocean Accident & Guarantee Corp. v. Aconomy Erectors, Inc., 224 F.2d 242, 247 (C.A. 7, 1955)] where after an apparently long travail, involved in a task not unlike our own, he said,

"An examination of it (a policy) involves a physical effort of no mean proportions. * * * If he (the examiner) is possessed of reasonable physical dexterity, coupled with

average mental capacity, he may then attempt to integrate and harmonize the dubious meanings to be found in this not inconsiderable package."

Certainly we recognize that the validity of the District Judge's conclusions are not entirely free of doubt. Some support can be found for defendant's position. But, under familiar rules, applicable here, whatever doubts remain are, under the facts of this case, to be resolved in favor of a finding of coverage.

■■ In so holding, we follow the rule that insurance contracts are to be construed liberally in favor of the insured and strictly against the insurer. Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Liverpool & London & Globe Ins. Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460; Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 439, 57 S.Ct. 607, 609, 81 L.Ed. 732. If there are ambiguities in a policy, they will be construed against its author. Allor v. Dubay, 317 Mich. 281, 26 N.W.2d 772; Francis v. Scheper, 326 Mich. 441, 448, 40 N.W.2d 214; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 91, 68 L.Ed. 235; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 322, 48 S.Ct. 512, 515, 72 L.Ed. 895.

■ By its reliance on its exclusion clause, defendant concedes that Division 1—*Premises—Operations* would, but for the claimed exclusion of Division 4, have covered the liability asserted against the McNallys in the Kalamazoo case. In case of ambiguity, exclusions will be construed strictly and against the insurer; ambiguities will, where sound reason will permit, be construed to effect the insurance coverage intended. Pawlicki v. Hollenbeck, 250 Mich. 38, 43, 229 N.W. 626; Kangas v. New York Life Ins. Co., 223 Mich. 238, 193 N.W. 867. We believe that there being uncertainty as to the applicability of the exclusion clause, a

strict construction thereof must be made against the insurer and it was the burden of its author to establish its applicability here. American Indemnity Co. v. Sears, Roebuck & Co., 195 F.2d 353, 356 (C.A. 6, 1952). This, defendant failed to do.

■ It is not necessary to cite authority for the proposition that in construing insurance contracts, as well as contracts generally, the contract will be read as a whole. Courts will not rewrite or make insurance contracts that the parties themselves did not make. Where unambiguous, they will be construed and enforced in accordance with their plain and ordinary meaning. Bergholm v. Peoria Life Ins. Co., supra; Imperial Fire Ins. Co. v. County of Coos, 151 U.S. 452, 463, 14 S.Ct. 379, 381, 38 L.Ed. 231. Giving effect to these rules, and after our own labor in examining the contract before us, we find no error in the District Judge's factual findings and his conclusion that defendant's policy covered the liability attempted to be asserted against the McNallys in the state court of Michigan. In conclusion, we refer to the extensive opinion of District Judge Graven in the case of Nielson v. Travelers Indemnity Company, 174 F.Supp. 648, (D.C.) affirmed on his opinion by the 8th Circuit in Travelers Indemnity Company v. Nielson, 277 F.2d 455 (C.A. 8, 1960). There, a sewer contractor damaged a main in the course of fulfilling a contract. After his work was completed, an accident occurred as a result of the negligent damaging of the main by the contractor. In a policy written by the defendant insurance company, products liability was specifically excluded from the coverage by an endorsement entitled "Exclusions of Products Hazard." The policy purchased by Nielson had two subdivisions defining products hazard, with language identical with subdivisions (1) and (2) of Division 4, "Products—Completed Operations" in the policy in the case at bar. There, the insurance company made the same claim as the defendant here, viz., that the only coverage afforded was for accidents occurring while the insured was

actually on the job. In the declarations of the policy, there was typewritten the coverage as "Sewer Construction—all operations * * *." In holding that the exclusions relating to completed operations had only to do with "products" the court held for the plaintiff insured. An exhaustive analysis of the policy and an extensive review of the cases having to do with the subject is contained in the district court's opinion. We agree with its conclusions and cite it in support of our affirmance of the judgment of the District Court.

Since first preparing this opinion, the writer has received Judge Weick's able dissent. Therein he calls attention to the fact that the McNallys did not buy several coverages found in the body of the policy, viz.: Division 2, Elevators;[3] and coverage D—Contractual Liability of a Specified Type.[4] Such coverages were, by the Exclusions section of the policy, and as stated by Judge Weick, excluded from coverage under Division 1—Premises—Operations. The writer is of the opinion that these coverages and their exclusion had nothing to do with McNallys' coverage for "elevator inspecting." This view is apparently shared by the defendant insurance company, because neither of such exclusions were relied upon by it as defenses in its pleadings or in its contentions in the District Court or here. Its failure to do so exhibits its awareness that to have done so would be a confession that this company provided no insurance for "elevator inspecting," the sole subject matter of the policy. Had attempt been made to assert such defenses, plaintiff might well have been allowed to amend its pleadings to

ask for a reformation of the policy to have it cover "elevator inspecting" which undisputedly was intended to be covered. We do not think such defenses should now be raised by us.

My brother's dissent also says that the McNallys were handling "products." Such was not the position of defendant when it insisted that Section 2 of Division 4—Completed Operations, had nothing to do with products.[5] The McNallys made no products. Such parts as were needed incidental to repairs were or had been purchased by them.

All of this adds up to a rather convincing demonstration of the ambiguity which the District Judge found in this insurance contract. We do not take the view that the words "all operations" covered "everything under the sun," as has been suggested. We are of the opinion, however, that as a minimum they did cover, even with all exclusions indulged, the work of "elevator inspecting" so clearly written as the subject of the policy.

Appellant avers other claimed errors which it says call for a new trial. We have considered them and are of the opinion that they present no substantial error.

Judgment affirmed.

WEICK, Circuit Judge (dissenting).

I regret that I cannot agree with the view of the majority, so well expressed by Judge O'Sullivan, that the insurance policy protected McNallys "from all liability arising out of work done in the performance of their contract to inspect and maintain elevators in the Kalamazoo

3. The term elevator as used in Division 2 is defined in the Definition section as, "any hoisting or lowering device to connect floors or landings at any building owned, rented or controlled by the named insured, unless the named insured owns, rents or controls only a part of the building and does not operate, maintain or control the elevator * * *."

4. The contractual liability is defined as, "liability assumed by him under any of the following types of agreement: (1) a lease of premises; (2) a side track agree-

ment; (3) *an elevator or escalator maintenance agreement;* (4) an easement agreement in connection with a railroad grade crossing; (5) an agreement required by municipal ordinance in connection with work for the municipality.

5. On the trial, defendant's counsel was asked if defendant's position was that plaintiff had no coverage "on the theory he didn't have products insurance." The answer was, "Not products, your Honor, Completed Operations."

Hotel." McNallys could have purchased this special type of coverage, but they did not do so. McNallys claim that they wanted "to be covered if sued for anything that might happen and that they wanted all the protection they could get for the least money." The policy which they purchased, however, did not cover everything that might happen. The Court, in my judgment, construed the policy as if it did and gave no effect to the exclusionary provisions of the policy.

The result of the Court's decision is to add additional coverage to McNallys' insurance policy for which they paid no premium and which was specifically excluded from the policy.

The policy was a composite one applicable generally to manufacturers and contractors and provided five types of coverage each one of which could be obtained by payment of the applicable premium therefor. The trouble here is that McNallys purchased only one type of coverage. They want to extend the policy to cover some of the other types.

The first line of the policy reads that the Company "Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, *exclusions*, conditions and other terms of this policy."

The "Declarations" contained a description of the five hazards which could be purchased by the insured and provided:

"Item 3. The insurance is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage and division shall be as stated herein."

The limits of liability were $25,000 for bodily injury to one person and $50,000 for each accident and $25,000 for property damage. The premium paid was $63.15.

The specific premium charges were indicated in the Declarations only for Item IV Division 1 of the policy which was entitled "Premises—Operations" and was defined in the policy as "The ownership, maintenance or use of premises and all operations." The Declaration indicated "Purposes of Use—Classification and Code" and stated "Elevator Inspecting # 2475 Elevator Erection or repair—including incidental operation of elevators for testing purposes # 5160."

The following hazards, shown in the Declarations, contained no premium charge or charges and hence were not covered by the policy:

Division 2. Elevators [1]

Division 3. Independent Contractors

Division 4. Products—Completed Operations [2]

1. Division 2—Elevators
   The ownership, maintenance or use of any elevator designated in the declarations.
2. Division 4—Products—Completed Operations
   (1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

   (2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be "operations" within the meaning of this

Coverage D. Contractual Liability of a Specified Type [3]

Not only were the above hazards for which no premium was paid not covered, but in the body of the policy they were specifically excluded by language which I think is clear and unambiguous.[4]

The view of the District Court, approved by the majority, was that the accident came within the purview of the words "all operations" in Item IV "Division 1—Premises—Operations." Granting that the words "all operations" are very broad, it is clear to me that this language was expressly limited by the exclusions in the policy, being (a) to (f) inclusive and as so limited provided coverage only for accidents occurring on the hotel premises during the progress of the work.

McNallys were not engaged in doing any work on the elevator at the time it fell and injured a guest passenger of the hotel nor were they on the hotel premises. They did not own or control the hotel premises or the elevator. At the time of the accident, the elevator was operated by the hotel company in the regular conduct of its business and was in its exclusive possession and control. McNallys claimed that they had intended later to install a rotor in the elevator after they had procured one from Otis Elevator Company, but had not commenced this operation because they had not received the rotor. In my judgment, the record furnishes no support for the view of the Court that the hotel premises and elevator were in the actual or constructive possession and control of McNallys at the time of the accident.

McNallys' liability to the hotel company or to strangers, if any, could only be predicated on negligent performance

paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 4 of the declarations specifically includes completed operations.

3. Coverage D—Contractual Liability of a Specified Type: To pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any of the following types of agreements, if in writing and if described in Item 4 of the declarations, shall become legally obligated to pay as damages because of:

Division 1: Bodily Injury Liability—bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

Division 2. Property Damage Liability—injury to or destruction of property, including the loss of use thereof, caused by accident.

Types of Agreements:
(1) a lease of premises;
(2) a sidetrack agreement;
(3) *an elevator or escalator maintenance agreement;*
(4) an easement agreement in connection with a railroad grade crossing;
(5) an agreement required by municipal ordinance in connection with work for the municipality.

4. EXCLUSIONS
This policy does not apply:
(a) under division 1 of the Definition of Hazards, and under coverage C, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured, except insofar as this part of this exclusion is stated in the declarations to be inapplicable, (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining, or (3) aircraft;
(b) under division 1 of the Definition of Hazards, to elevators;
(c) under division 1 of the Definition of Hazards, to (1) the Independent Contractors Hazard or (2) the Products—Completed Operations Hazard;
(d) under division 1, 2 and 3 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement;
(e) under division 3 of the Definition of Hazards, to any act or omission of the named insured or any of his employees, other than general supervision of work performed for the named insured by independent contractors;
(f) under division 4 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement except a warranty of goods or products;

of their contract to inspect the elevator. It could only be founded on the proposition that they had, previously to the accident, made an improper inspection. This was the gist of the complaint against them for personal injuries filed in the state court and is controlling here as to the nature of liability sought to be imposed. McNallys did have a continuing duty of inspection under their contract with the hotel company, but I do not construe the coverage provided by the liability policy as insurance for the faithful performance of that contract.

In my opinion, this type of operation by McNallys came within the plain language of Division 4(2) of the policy entitled "Completed Operations" and if it did coverage was expressly excluded under Exclusion (c) (2).

It also seems clear to me that no coverage was provided for contractual liability. Exclusion (f).

McNallys could have claimed with equal propriety that the words "all operations" covered their automobiles when driven upon the public highways, but this was also restricted to operations on the premises by Exclusion (a) (2).

In construing the policy resort must be had to the entire instrument and this included the risks for which no premium was paid which were specifically excluded. Duval v. Aetna Casualty & Surety Co., 304 Mich. 397, 8 N.W.2d 112. It cannot be claimed that McNallys were mislead by any provision in the policy because the proof is that they never read it. Furthermore, this action was not to reform the policy. We are required to construe the policy as it was written.

I think it is wholly immaterial that the entire policy other than the paragraph headings and the Declarations, which were on a separate page, was in fine print. I am sure that McNallys could have read the fine print if they had any inclination to do so. The policy could have been made into a much larger package by the use of bigger type, or it could have been made smaller if only one risk had been provided for, but the size of the policy, it seems to me, is a matter of business judgment for the company and not for us to consider.

I am unable to follow the reasoning of the Court relative to Division 4 Products —Completed Operations. True, the paragraph heading Products and Completed Operations is separated by a hyphen, but I do not attach any significance to this. Division 4(1) provides for Products and 4(2) Completed Operations. Each paragraph is separate and complete. The fact that a semicolon instead of a period appears at the end of Paragraph 1 does not make the separately numbered paragraphs any the less separate. If there was any conflict between the paragraph headings and the language in the paragraphs, the latter would control.

The District Court in Paragraph 6 of his Conclusions of Law said:

"The exclusionary provision (c) (2) of the policy cannot be interpreted as having any application to the hazards against which plaintiffs are insured for the reason that it makes specific reference to 'the Products—Completed Operations Hazard'; and the plaintiffs were not engaged in a business involving products. Their business was *service*."

I submit that even if plaintiffs handled no products (and the uncontroverted proof shows that they did handle products) Paragraph 2 of Division 4 relating to Completed Operations would nevertheless apply to their operations. As I view it Paragraph (1) of Division 4 insured against liability occasioned by defective products while Paragraph (2) covered work which was improperly or defectively performed. Even if McNallys had no product, the purchase of Products—Completed Operations coverage would have protected them against liability occasioned by their improper workmanship.

But the undisputed evidence showed that McNallys did handle products as part of their service arrangement. The written contract between McNallys and Burdick Hotel provided not only for in-

specting and servicing the hotel elevators, but also that McNallys would supply the following parts when necessary: "machine, motor, generator and controller parts including worms, gears, thrusts, bearings, brake magnet, coils or brake motors, brake shoes, brushes, windings, commutators, rotating elements, contacts, coils, resistance for operating and motor circuits, magnet frames and other mechanical parts." In addition, McNallys agreed to renew guide shoes gibs or guide rollers, wire ropes and repair or replace conductor cables. They agreed to furnish "lubricants compounded to our rigorous specifications." McNallys kept some of these parts in inventory. Division 4(1) of the policy was not limited to products manufactured by McNallys, but covered any that were "sold, handled or distributed" by them. The contract with the hotel was not the only elevator maintenance contract which McNallys had with their customers.

Paragraph 7 of the Conclusions of Law adopted by the District Court provides:

"7. Division 4 (Products—Completed Operations) hazard is meaningless when an attempt is made to apply it to plaintiffs' operations which remained *incomplete* for the life of the service contract they had with the Burdick Hotel."

I think the District Court has misinterpreted the policy. Operations were completed whenever McNallys finished their work on the elevators and left the premises. The uncontroverted fact is that McNallys were not performing any work on the elevators at the time of the accident. The duties of inspection required by the contract, however, remained until the contract expired or was terminated.

The majority has construed the policy as protecting McNallys for breach of warranty of good workmanship or inspection and as insuring the faithful performance of their contract with the Hotel Company.

Protection as against liability for warranty was afforded only by Division 4

Products—Completed Operations. This appears from the language of Division 4 (2) "improperly or defectively performed" and the provisions of Exclusion (f).

McNallys could also have procured specific coverage for liability assumed under their service contracts by purchasing Coverage D "Contractual Liability of a Specified Type." One of the types which could have been specified was "(3) An elevator or escalator maintenance agreement."

The entire policy and not just part of it was before the District Court for construction. Even though part may not have been stressed, this affords no basis for imposing liability where none exists.

I agree with the reasoning of the New York Court of Appeals in Berger Brothers Electric Motors, Inc. v. New Amsterdam Casualty Co., 293 N.Y. 523, 58 N.E. 2d 717 which explained the purpose of the exclusion clauses in a similar policy. The court said:

"By these clauses the parties intended to limit the casualty company's liability to accidents occurring during the progress of the work and to exclude liability for accidents occurring, after the work was completed, as the result of defective workmanship. If that be not the meaning of the plain language used, the insurer would remain liable indefinitely for defective workmanship upon the theory that defective work is never complete until the defect is discovered and corrected. But this is a risk which the parties intended to exclude from the coverage of the policy, and we cannot read these policies as intended to cover such risks, for the language is plain and unambiguous."

See also: Butler v. United States Fidelity & Guaranty Co., 197 Tenn. 614, 277 S.W.2d 348; Baker v. Maryland Casualty Co., 73 R.I. 411, 56 A.2d 920.

So-called experts gave conflicting opinions at the trial as to their interpretation of provisions of the insurance policy. Opinion evidence was not admissible to

interpret a contract unless it contained technical terms of art, science or trade. 20 Am.Jur. § 829, p. 696. The policy contained no such technical terms. In 9 Wigmore on Evidence, 3rd ed. § 2556, p. 522, the author states that "The construction of all *written instruments* belongs to the courts." See: Cordovan Associates, Inc. v. Dayton Rubber Co., 290 F.2d 858 (C.A. 6); Home Insurance Co. v. Continental Insurance Co., 180 N.Y. 389, 396, 73 N.E. 65. The fact that the experts disagreed does not in my judgment, make the contract ambiguous. Their testimony was not admissible.

It was not competent to vary or change the written contract by parol evidence as to the type of coverage which the McNallys claim they wanted, but did not purchase.

I would reverse the judgment of the District Court and dismiss the complaint.