171 So.2d 40 (1965)
MILLER ELECTRIC COMPANY OF FLORIDA, a corporation, Appellant,
v.
The EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Limited, Appellee.
No. F-399.
District Court of Appeal of Florida. First District.
January 14, 1965.
Rehearing Denied February 8, 1965.
*41 Herman Ulmer, Herman Ulmer, Jr., Davisson F. Dunlap, and John D. Corse, of Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, for appellant.
Harry T. Gray, Francis P. Conroy, II, and H. Franklin Perritt, Jr., of Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellee.
WIGGINTON, Judge.
Appellant, Miller Electric Company of Florida, a corporation, filed its complaint seeking a judicial declaration as to its rights under a comprehensive liability insurance policy issued it by appellee, The Employers' Liability Assurance Corporation, Limited. From an adverse decree Miller has appealed.
Appellant Miller is a general electrical contractor and is not engaged in the manufacture of products. It procured from Employers' a comprehensive liability insurance policy by which Employers' agreed to pay on behalf of Miller all sums which the latter shall become obligated to pay by reason of liability imposed upon it by law for damages because of bodily injury sustained by any person or persons. While the insurance policy was in force and effect Miller performed a contract for the Florida State Board of Control which consisted of the construction and installation of an electrical distribution system designed for the purpose of transmitting electrical power from its generated source to various buildings at the Miller Health Center of the University of Florida at Gainesville. After Miller had completed performance of its contract, but while the policy of insurance was still in force and effect, an employee of the Board of Control, while servicing an underground cable, was injured as a result of the alleged negligent installation of the transmission system by Miller. The injured employee brought suit against Miller who immediately notified Employers' of its pendency and made demand upon Employers' to assume the defense of the action and to pay any judgment which may be rendered against Miller within the coverage limits of the insurance policy. Employers' disclaimed any liability under its insurance policy with Miller on the ground that under the products hazard exclusionary clause of the policy Employers' has no obligation to Miller for injuries to third persons which arise after Miller's performance under its contract is completed and it has abandoned the construction site. It was because of Employers' refusal to assume liability and defend the action that Miller instituted this suit for declaratory decree seeking a determination as to the liability or nonliability of Employers' under the insurance policy in question.
No disputed issue of fact is involved in the case, the question presented for decision being solely one of law. By his decree the chancellor found that Miller is not a manufacturer of products but is a general electrical contractor and the liability asserted against Miller in the suit brought by the injured employee is upon a claim that Miller negligently performed its contract with the Board of Control. The sole question presented for decision is whether the exclusion of "products hazard" as defined in the insurance policy under consideration operates to limit the general liability coverage of the policy only to injuries resulting from the negligence of the insured occurring during the progress of the work, and to exclude liability if such injuries occur after the work is completed. In summary, the chancellor held that appellee Employers' was under no duty to defend the suit brought against Miller for the reason that the injuries suffered by the plaintiff in that suit *42 were sustained after Miller's contract was completed, and liability therefore is not covered by the terms and provisions of the insurance policy. It is from that declaratory decree that this appeal is taken.
The insurance policy involved in this case is entitled "Comprehensive Liability Policy" and contains the following provisions which bear upon our consideration of the question presented, to wit:
"DECLARATIONS
The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges * * *
"Item 3. * * *
The products hazard as defined is Excluded under Coverage B

"Item 4.
Coverages Limits of Provisional
 Liability Deposit
 Premium
--------------------------------------------------------------------------
 * * * * * * * * * * * * *
Coverage B  $100,000.00 each person $532.55
Bodily Injury Liability $300,000.00 each occurrence (Monthly
Except Automobile 7 $ Not covered aggregate Dep. Prem.)
 products

"THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED (A Stock Insurance Company, herein called the Company) Agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:
"INSURING AGREEMENTS
"* * *
Coverage B  Bodily Injury Liability  Except Automobile. To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons.
* * *
"EXCLUSIONS
"This policy does not apply:
* * * * * * * * * * * *
(g) under Coverages B * * * to the products hazard as defined, except in so far as this exclusion is stated in the declarations to be inapplicable; * * *
"CONDITIONS
* * *
"Definitions. * * *
"(d) PRODUCTS HAZARD. The term `products hazard' shall mean
"(1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named Insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured or on premises *43 for which the classification stated in the Company's manual excludes any part of the foregoing;
"(2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the Insured, except (a) pick-up and delivery, (b) the existence of tools, uninstalled equipment and abandoned or unused materials and (c) operations for which the classification stated in the Company's manual specifically includes completed operations; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement."
Since the question of law presented for determination calls for a judicial construction of an exclusionary provision of an insurance policy, it might be helpful to first consider some general principles of construction which must be observed as guidelines in reaching our decision. In construing an insurance policy for the purpose of determining the intent of the parties, the instrument must be considered in its entirety, and that construction should be adopted which will give effect to the total instrument and to each of its various provisions.[1] Clear and unambiguous language should be accorded its natural meaning,[2] and the courts should not extend strictness in construction to the point of adding a different meaning to language that is clear.[3] Where a contract of insurance is prepared by the insurer, it is to be construed liberally in favor of the insured and strictly against the insurer in those instances where the meaning of the language is doubtful, uncertain, or ambiguous.[4] Terms in an insurance policy which are ambiguous, equivocal or uncertain to the extent that the intention of the parties is not clear and cannot be clearly ascertained by the application of ordinary rules of construction, such terms are construed strictly and most strongly against the insurer and liberally in favor of the insured so as to effect the primary purpose of payment to the insured.[5] The reason underlying this principle is that insurance policies are prepared by experts employed by the insurer, and the relationship of each provision to the others contained in the policy is difficult for laymen to understand or fully appreciate.[6] Where there are two different interpretations which may fairly be given to the language used in an insurance policy, the one which allows the greater indemnity will govern.[7] It is with the foregoing general principles in mind that we now revert to the primary question presented by this appeal.
Appellant strenuously contends that it purchased and paid the premium for the policy of liability insurance issued by appellee in order to protect itself against loss which it might incur as a result of the negligent acts of its employees, and those for which it may be held liable, occurring in the performance of the work in which it is engaged as a general electrical contractor. *44 Appellant contends that Coverage B pertaining to bodily injury liability affords it such insurance and protects it against the consequences of its negligent acts for injuries from accidents occurring during the policy period. Appellant therefore urges that since the suit brought against it by the employee of the Board of Control involves a cause of action which accrued during the policy period resulting from the alleged negligence of appellant's employees committed in the performance of its contract with the Board of Control, that appellee is obligated under the insurance policy to defend the action and pay any judgment which may be rendered against appellant within the limitations of the insurance coverage.
Appellee invites attention to Item 3 contained in the declarations on the first page of the policy which provides that, "The products hazard as defined is excluded under Coverage B," the coverage on which appellant relies for protection in this case. Appellee then turns to the third page of the insurance policy under the heading "Conditions" and points to the definition of "Products Hazard" contained in sub-paragraph 3(d)(2) thereof which provides that the term "Products Hazard" shall mean: "(1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured * * *, if the accident occurs after the insured has relinquished possession thereof to others * * *; (2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from the premises owned, rented or controlled by the insured * * *; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement." Appellee contends that under the products hazard exclusionary clause above mentioned the coverage of the policy does not apply to any loss or liability resulting from an accident which occurs after the operations of the insured have been completed or abandoned at the place of occurrence thereof, and that since the evidence in this case affirmatively establishes without dispute that the injuries suffered by the plaintiff in the suit brought against Miller occurred after the latter had completed its contract with the Board of Control and at a place it had abandoned, no coverage is provided under the policy. In the absence of coverage, appellee asserts that it is neither obligated to defend the suit brought against Miller, nor to pay any judgment which may be rendered against the latter because of its alleged negligence in the performance of its contract. This is the construction placed upon the policy by the chancellor which appellee contends should be affirmed.
Appellant, in reply to appellee's position, argues that the products hazard exclusion contained in the policy is applicable only if the insured's liability results from the negligent construction, installation or use of a product manufactured, sold, handled, or distributed by it, but not otherwise. Appellant relies on the evidence which establishes without dispute that it is not a manufacturer, vendor, or distributor of products but is engaged exclusively in the rendition of services. It further points to the undisputed fact that all of the material and equipment used in the performance of its contract with the Board of Control was purchased from other manufacturers, distributors, and vendors. Our attention is further invited to the fact that the injuries suffered by the employee of the Board of Control resulted solely from the alleged negligent installation of the electrical equipment comprising a part of the electrical distribution system, and not from any defective product. On the assumption that the products hazard exclusion contained in the policy has no application to it under the facts shown by the evidence in this case, appellant takes the position that it is immaterial whether the accident, for which liability against it is claimed, occurred during *45 the performance of the contract, or afterward, so long as it happened within the policy period, as is the case here. Appellant argues that the manner in which appellee has arranged the declarations, exclusions, conditions and definitions provisions in the insurance policy here considered does not make it sufficiently clear and unambiguous to put a reasonably prudent person on notice that the coverage afforded by the policy for liability arising from bodily injury applies only to injuries occurring during the performance of the insured's work, but not thereafter. Appellant opines that had it been appellee's purpose to exclude coverage for liability arising from accidents occurring after appellant's work is completed, it would have been a simple matter to state such exclusion in clear, simple language which would have been readily understood by appellant and all others purchasing liability insurance for the purpose of self-protection. Appellant concludes its argument by contending that the construction placed upon the products hazard exclusionary clause by appellee renders the terms and provisions of the policy vague, equivocal, and ambiguous insofar as concerns the extent of the coverage afforded by the policy, which ambiguity should be resolved in favor of appellant.
The Second District Court of Appeal, in an opinion recently rendered by it in the case of New Amsterdam Casualty Company v. Addison, has considered and passed upon the precise question presented for our decision in this case.[8] The facts in the New Amsterdam case are similar in all material respects with the facts involved herein. The only distinction between the insurance policy involved in that case and the one involved here is that the exclusionary clause in the New Amsterdam policy was referred to and set forth under the heading "Products-Completed Operations Hazard," whereas the same clause in the case subjudice was referred to and set forth under the heading "Products Hazard."
The same contentions made by the parties before us were made by the parties in the New Amsterdam case. In an exhaustive and well considered opinion by Judge Kanner it was held that the "Products-Completed Operations Hazard" exclusionary clause involved in that case had application only when the insured is a manufacturer of products, but had no application in those instances where the insured is a general electrical contractor engaged in rendering services and is not engaged in the manufacture of products. The court held that under the liability insurance policy there considered coverage was afforded the general contractor for the negligent acts of its employees and agents committed during the performance of its contract although the injuries suffered by the third person were sustained after the contract was fully performed and the construction site abandoned, but within the policy term. In giving its reasons for reaching this conclusion the court held:
"* * * The exclusionary clause excluding `the Products-Completed Operations Hazard' makes no reference to contractors who do not manufacture or otherwise deal in products. Rather, this is a single exclusion excusing the insurer from liability under division 1 for `the Products-Completed Operations Hazard.' (Note the singular number of the word `Hazard' to which we have added emphasis.) The policy, in fact, contains no provision for completed operations divorced from products. * * * The situation here, then, is one wherein, by the circumstances presented, the appellee insured did not make and sell or otherwise deal in products and had no need for protection against hazards connected with products. The products-completed operations hazard thus could appear not to *46 bear any relation to services performed by him as an electrical contractor.
"* * * Realizing that an insurance company must be comprehensive in composition of a policy with all the various facets to be covered, this very fact makes it necessary that the instrument be clear, unambiguous and unequivocal in all its terms. We do not find that the present policy accomplishes this, but, rather, we find it ambiguous with respect to the coverage which is the subject of this controversy, leaving the matter in doubt. * * *
* * * * * *
"* * * We reiterate that in the policy before us we find ambiguity which clouds and renders it unclear. This ambiguity, under the particular facets of the policy in question, must be resolved against the insurer and in favor of the insured in order that the dominant purpose of the insurance shall be given effect. * * *"
In reaching its conclusion the Second District Court of Appeal selected from the many decisions of other courts bearing on the question under consideration five decisions on which it principally relied.[9] Each of the cited cases construe products hazard exclusionary clauses contained in liability insurance policies which are sufficiently similar to the comparable clause in the insurance policy involved in the case sub judice as to render any distinctions or differences immaterial. The insured in each of the cases was a contractor not engaged in the manufacture of products. In each case the insured contractor was sued by a person injured as a result of the alleged negligence of the contractor in the performance of his work, but after the contract had been completed and the construction site abandoned. In each case the insurance company sought to avoid liability on the ground that under the products hazard exclusionary clause of the policy no coverage was afforded for liability resulting from injuries sustained after the insured's work was completed. In each case the contention of the insurance company was rejected as unsound, the policy provision held to be ambiguous, and decisions rendered in favor of the insured upon the holding that the exclusionary clause had no application to a general contractor not engaged in the manufacture of products. Each of the cited cases was ably analyzed and quoted by Judge Kanner in the opinion written by him in the New Amsterdam case. It would unduly extend this opinion for us to duplicate such analyses in this opinion so we shall only refer to a few of the statements made by the courts in those cases which establish the rationale that influenced the conclusions reached.
In holding that the "Products-Completed Operations" exclusionary provision of the liability insurance policy was vague and ambiguous and therefore ineffective, the court in Maretti v. Midland Insurance Company, supra, said:
"* * * No layman and indeed no lawyer other than one who specializes in such matters can without considerable study understand the provisions which qualify the general risk here insured against. An examination of the policy involves physical and mental effort of no mean proportions. In addition to the four printed pages (the first of which consists largely of a form filled in on a typewriter), a rider is attached to the first page in such a way that it hides the most important provision of the policy, that is, that provision which designates the coverage *47 purchased. The policy contains such a bewildering array of exclusions, definitions and conditions that the result is confounding almost to the point of being unintelligible. There emerges through the confusion only one clear intention, that is, that the insurance company agreed to insure against risks incidental to the exhibition of fireworks. We construe the policy as covering liability for all accidents arising from the insured's operations, whether the accident happened during or after the exhibition was completed."[10]
In reaching a similar conclusion the court in McNally v. American States Insurance Company, supra, said:
"We are not persuaded that the average businessman would be unreasonable or lacking in understanding in assuming that the caption phrase `Products  Completed Operations' related to the subject of products liability and that the subdivisions thereof were both germane to such subject. In any event, we are of the opinion that the District Judge was justified in finding ambiguity in the phrase and resolving it against the phrase's author. * * *
"* * * It would not have required extraordinary skill for the authors of this policy to clearly express the meaning they asked the District Court and now ask us to find in their contract. * * *
"* * * The McNallys made no products. Such parts as were needed incidental to repairs were or had been purchased by them."[11]
And in Nielson v. Travelers Indemnity Company, supra, it was held:
"* * * The products hazard provision does not usually give rise to unusual difficulty as to liability insurance coverage where there is only involved the manufacture or sale of what is commonly known and regarded as a product. Where the transaction involves a contract between an independent contractor and an owner for the erection of a structure and the contractor furnishes material for the structure, greater difficulty is encountered as to liability insurance coverage under the products hazard provision. * * *
"The Court is of the view and finds under the circumstances in this case the terms of the policy are ambiguous as to the matter of coverage here involved and leaves that matter in doubt. Under the Iowa law such doubt and ambiguity are to be resolved in favor of the insured."[12]
The case of Kendrick v. Mason[13] decided by the Supreme Court of Louisiana involved a general liability insurance policy containing a products hazard exclusionary clause identical with the one involved in the insurance policy before us. The insured general contractor in the Kendrick case was sued for injuries resulting from his negligence in the performance of a contract which were sustained after the contract was fully performed and the work completed. There, as here, the insurance company sought to avoid liability on the ground that the completed work was a products hazard specifically excluded from the coverage of the policy. In rejecting this contention the Supreme Court of Louisiana said:
"It is significant that the policy contract does not recite that any of these exclusions pertains to or refers to contractors who have no products for sale but who have performed a contract for the installation of a public utility, as in the instant case, or even the erection *48 of any structure, public or private; whereas the policy does specifically recite that the assured, C.N. Mason, is a sewer and water main contractor. By no means of interpretation known to us can it be positively asserted that the exclusions in the policy and the endorsements attached thereto referred to contractors, and we deem it the fundamental duty of the insurer to express clearly the limitations of its obligation.
* * * * * *
"We are constrained to conclude that the liability exclusion provisions of the policy herein issued by the defendant to Mason are inapplicable herein for the reason that Mason handled no products but was engaged solely as a contractor and the exclusion provisions of the policy have no application to the construction work performed by him. The policy was issued to fully protect Mason against liability for acts of negligence committed by him during his performance of the contract. The tort which was the proximate cause of the damages sustained by plaintiff was in fact and in law committed during the performance of the construction contract. Both the accident and the injuries resulting therefrom were brought about not from the completed and accepted sewer system but from the direct result of the acts of negligence committed during its construction. The policy covering said accidents for which premiums were charged was then in full force and effect; and the conclusion is inescapable that the insurer is therefore liable in solido with its insured, Mason."
The rule adopted in the Kendrick case by the Supreme Court of Louisiana was subsequently followed by the Third District Court of Appeal of Louisiana in the case of Swillie v. General Motors Corporation,[14] and in Poynter v. Fidelity & Casualty Company of New York.[15]
Upon consideration of the foregoing authorities we are of the view that the products hazard exclusionary clause contained in the liability insurance policy issued to Miller by Employers' has no effect upon the general coverage afforded by the policy for the reason that the injury for which Miller is being sued was caused by Miller's negligent performance of its contract in the installation of an electric transmission line, and not as a result of a defective product manufactured or sold by Miller. Under the circumstances it is immaterial that the accident giving rise to the cause of action to which Miller is required to respond accrued after Miller's work under the contract with the Board of Control was completed. To hold that the construction placed upon its policy by Employers' has validity would render the policy vague and ambiguous and the coverage afforded thereby doubtful and uncertain. In this event it would be necessary, under the general rules of construction hereinabove mentioned, to construe the ambiguity and doubt in favor of Miller and against Employers'. Under either view of the case the declaratory decree appealed herein must be and it is reversed and the cause remanded for further proceedings consistent with the views which we have expressed. In fairness to the chancellor, it must be noted that the decision of the Second District Court of Appeal in the New Amsterdam case was rendered after entry of the decree which is the subject of this review.
Reversed.
STURGIS, Chief Judge, and RAWLS, J., concur.
NOTES
[1] King v. Sturge (Fla.App. 1959) 113 So.2d 257; New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675.
[2] Pafford v. Standard Life Ins. Co. of Indiana (Fla. 1951) 52 So.2d 910.
[3] Rigel v. National Casualty Company (Fla. 1954) 76 So.2d 285.
[4] Firemans Fund Ins. Co. of San Francisco, Cal. v. Boyd (Fla. 1950) 45 So.2d 499.
[5] Beasley v. Wolf (Fla.App. 1963) 151 So.2d 679.
[6] The Praetorians v. Fisher (Fla. 1956) 89 So.2d 329.
[7] Howard v. American Service Mut. Ins. Co., (Fla.App. 1963) 151 So.2d 682.
[8] New Amsterdam Casualty Company v. Addison, 169 So.2d 877, Second District Court of Appeal, Opinion filed October 21, 1964.
[9] Maretti v. Midland National Insurance Company, 1963, 42 Ill. App.2d 17, 190 N.E.2d 597; Hoffman & Klemperer Co. v. Ocean Accident & Guar. Corp., 7 Cir., 1961, 292 F.2d 324; McNally v. American States Insurance Company, 6 Cir., 1960, 308 F.2d 438; Peerless Insurance Company v. Clough, 1963, 105 N.H. 76, 193 A.2d 444; Nielson v. Travelers Indemnity Company, D.C., 1959, 174 F. Supp. 648, aff'd Travelers Ind. Co. v. Nielson, 8 Cir., 1960, 277 F.2d 455.
[10] Id. 190 N.E.2d at 602.
[11] Id. 308 F.2d at 443, 444, 446.
[12] Id. 174 F. Supp. at 653, 662.
[13] Kendrick v. Mason (1958) 234 La. 271, 99 So.2d 108, 116-117.
[14] Swillie v. General Motors Corporation et al. (La. App. 1961) 133 So.2d 813.
[15] Poynter v. Fidelity & Casualty Company of New York (La. App. 1962) 140 So.2d 42.