290 So.2d 26 (1973)
John NIXON, Petitioner,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Respondent.
No. 41981.
Supreme Court of Florida.
October 3, 1973.
Davis W. Duke, Jr. of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for petitioner.
Steven R. Berger of Carey, Dwyer, Austin, Cole & Selwood, Miami, for respondent.
McCAIN, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the Fourth District Court of Appeal, reported at 255 So.2d 277. Our jurisdiction is based upon conflict between this case *27 and Aetna Insurance Co. v. Stevens, Fla. App., 1969, 229 So.2d 601. We have jurisdiction pursuant to Fla. Const., Art. V, § 3(b)(3), F.S.A.
In this construction of a liability policy over the wrongful death of a minor, no ignominious retreat can be given to a determination of the appropriate application of law. Instead, we can and should express the deeply imbedded roots in the concept and universal concern over the application of justice.
Thin defenses should not and cannot obscure stark realities and clear-cut dividing lines. Even the prick of curiosity when viewed under the microscope of quantitative analysis discloses the apparent meaning of language stated when ascribing intention to the words used.
The salient facts establish that in 1965, during the life of an insurance policy issued to Nixon by U.S. Fidelity, a fifteen month old child was killed when a cinder block wall collapsed on him. The wall was part of a residence constructed by Ted Miller, an unlicensed contractor, under a building permit issued to Nixon. The child's surviving mother brought suit against Nixon and Miller for negligent construction of the wall.
The suit papers were forwarded by Nixon to U.S. Fidelity, but both defense and coverage under the policy were refused on the ground that the policy did not cover a completed operation. A jury verdict was entered against Nixon in favor of the child's mother in the amount of $15,000.00.
As a result of this judgment, Nixon brought suit against U.S. Fidelity to enforce coverage and to recover his defense costs. The lower court held that the policy did not provide liability coverage and defense to a general contractor for a completed operation. On appeal, the Fourth District Court of Appeal affirmed.
The question which we must decide is whether or not the insurance policy in dispute is so ambiguous concerning Nixon's coverage as to compel resolution of the ambiguity in favor of Nixon, thus requiring that U.S. Fidelity provide both coverage and defense payments. We answer this question affirmatively.
It is of significance that Nixon is engaged in the general contracting business; he is not a manufacturer or seller of goods or products. In order to cover himself from liability resulting from accidental injuries arising out of his contracting business, he purchased from U.S. Fidelity a liability insurance policy. This policy provided in pertinent part as follows:
"INSURING AGREEMENT
"I Coverage A  Bodily Liability.
"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereafter defined.

......
"Definition of Hazards
"Division 1  Premises  Operations.
"The ownership, maintenance or use of premises, and all operations.

......
"Division 4  Products  Completed Operations.
"(1) Goods or products manufactured or sold, handled or distributed by the Named Insured ... if the accident occurs after possession of such goods or products has been relinquished to others by the Named Insured ...
"(2) Operations, including any act or omission in connection with operations performed by or on behalf of the Named Insured on the premises or elsewhere and whether or not goods or products are involved in such operations, if the accident occurs after such operations *28 have been completed ... provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement... .
......
"II Defense, Settlement, Supplementary Payments.
"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the Company shall:
"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent... .
......
"EXCLUSIONS
"This policy does not apply:
......
"(c) under Division 1 of the Definition of Hazards, and under coverage to (1) the Independent Contractors Hazard or (2) the Products  Completed Operations Hazard... ." (Emphasis added.)
In summary, the policy provides coverage for bodily injury sustained by accident which arises out of certain defined hazards. Pertinent to this cause are the following hazards: (1) Premises  Operations; and, (2) Products  Completed Operations. Under the exclusion provision of the policy, the latter hazard, Products  Completed Operations, is excluded. Finally, defense of claims was to be provided for injuries covered by the policy.
This policy is essentially identical in language and effect as the policies involved in Aetna, supra; Miller Electric Co. v. Employer's Liability Assurance Co., 171 So.2d 40 (Fla.App. 1, 1965), and New Amsterdam Casualty Co. v. Addison, 169 So.2d 877 (Fla.App. 2, 1964).
In New Amsterdam the insured was covered for injuries arising out of "all operations" by a definition of hazards clause identical to that included in the policy before us. The policy also included an exclusion similar to that in the instant case, excluding coverage under Division 4  Products  Completed Operations. In upholding coverage for the insured, who was an electrical contractor and not a manufacturer or seller, the Second District Court of Appeal stated:
"Appellee is unequivocally and unqualifiedly covered in the opening paragraph of `Definition of Hazards' for `all operations' for which he paid coverage premiums. (Italics supplied.) The exclusionary clause excluding `the Products  Completed Operations Hazard' makes no reference to contractors who do not manufacture or otherwise deal in products. Rather, this is a single exclusion excusing the insurer from liability under division 1 for `the Products Completed Operations Hazard.' (Note the singular number of the word `Hazard' to which we have added emphasis.) The policy, in fact, contains no provision for completed operations divorced from products ... The situation here, then, is one wherein, by the circumstances presented, the appellee insured did not make and sell or otherwise deal in products and had no need for protection against hazards connected with products. The products-completed operations hazard thus could appear not to bear any relation to services performed by him as an electrical contractor.
"... Realizing that an insurance company must be comprehensive in composition of a policy with all the various facets to be covered, this very fact makes it necessary that the instrument be clear, unambiguous, and unequivocal *29 in all its terms. We do not find that the present policy accomplishes this, but, rather, we find it ambiguous with respect to the coverage which is the subject of this controversy, leaving the matter in doubt." 169 So.2d at 881-182.
Miller Electric involved essentially the same facts and result as New Amsterdam and a discussion of it will add little to this cause.
In an attempt to distinguish the instant case from Miller Electric and New Amsterdam, U.S. Fidelity points out that the policies involved in those cases did not contain a provision in the products  completed operations definition similar to that contained in the policy now before this Court, to-wit: "operations ... whether or not goods or products are involved in such operations... ." Because of this added language, U.S. Fidelity argues that Nixon should have known that the express exclusion of "products  completed operations" eliminated coverage of all completed operations and not just those operations dealing with goods and products as was the case in Miller Electric and New Amsterdam.
This argument, however, was dealt with in Aetna. In Aetna, the policy was identical in all material respects to the policies in Miller Electric and New Amsterdam. The only distinction of significance from those cases is that the insurer in Aetna by way of an interpretive endorsement purported to eliminate any ambiguity by adding nearly identical language to the "products  completed operations" hazard clause as in the case before us. It was argued that this provision corrected the defect found in Miller Electric and New Amsterdam. Upon rehearing, Judge Mann, in response to this argument, stated that the question need not be decided. Judge Mann, however, did decide the argument in the sentence which followed this statement by holding that the policy was at best ambiguous. In giving the Second District Court of Appeal's reasoning for reaching this conclusion, Judge Mann held:
"If this insurance company had no intention of defending an electrical contractor accused of negligent installation (not manufacture) after completion of his work it should have said so in plain English. See Flesch, The Art of Plain Talk, passim.

"The cases we cited suggest clearly that when the insurance company states clearly on page one of the policy that it excludes a certain section of the policy the insured may look to what he has bought to determine his coverage. To diminish that coverage by redefining what he hasn't bought is productive of ambiguity at least. That is the most charitable view which can be taken of the finished product of the insurer's draftsmen." 229 So.2d at 602.
We agree with the result reached in Aetna. In finding ambiguity, we are persuaded by the reasoning of Judge Kanner in New Amsterdam that insurance policies, which are prepared by experts in a very complex area and involving the intricate interplay of the various provisions of a given policy, are difficult for a layman to understand. Under the policy before us, the policy provided coverage for "all operations". Excluded is coverage entitled "Products  Completed Operations". The average businessman cannot be said to be unreasonable or lacking in understanding in assuming that this caption phrase related to the subject of products liability, which the insured not engaged in manufacturing had no interest in, and that the subdivisions thereof both related to such subject. See McNally v. American States Ins. Co., 308 F.2d 438 (6th Cir.1960).
Thus, the policy before us is at least ambiguous with respect to what coverage is provided to Nixon and we resolve this ambiguity in his favor, compelling both coverage and defense payments by U.S. Fidelity.
*30 Accordingly, the decision of the Fourth District Court of Appeal is quashed and the cause remanded for proceedings not inconsistent herewith.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN and ADKINS, JJ., concur.
BOYD and DEKLE, JJ., dissent.