348 So.2d 379 (1977)
SANDPIPER CONSTRUCTION COMPANY, INC., a Florida Corporation, Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, a Foreign Corporation, Appellee.
No. 76-216.
District Court of Appeal of Florida, Second District.
July 22, 1977.
Charles H. Livingston, Sarasota, for appellant.
W. Robert Mann, Bradenton, for appellee.
PER CURIAM.
Joseph Ciambrone brought suit against the appellant Sandpiper and appellee United States Fidelity & Guaranty Company (USF&G). Ciambrone alleged that Sandpiper, a building contractor, constructed a commercial building for him and, approximately six months after the completed building was delivered, part of the roof collapsed. Ciambrone sought damages against Sandpiper on theories of negligence, breach of contract and breach of warranty. USF&G was named a defendant by virtue of its being Sandpiper's insurer.
USF&G had issued a liability policy to Sandpiper but contended that there was no coverage for Ciambrone's claim since it arose after the contractor had completed its operations. The trial court denied USF&G's motion for summary judgment, *380 but did grant a separate trial on the issue of coverage under the insurance policy issued Sandpiper by USF&G.
After hearing evidence on this issue, the trial judge concluded that Sandpiper's operations had been completed prior to collapse of the roof. Since Sandpiper's insurance policy excluded coverage for completed operations, the trial court held USF&G was not liable. From this judgment, Sandpiper appeals. We affirm the decision of the trial court.
The trial court based its holding of noncoverage on the following exclusionary language of the Sandpiper policy:
EXCLUSION
(Completed Operations Hazard and Products Hazard)
It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage and, if a Contractual Liability Insurance (Designated Contracts Only) Coverage Part forms a part of the policy, such insurance as is afforded by such Coverage Part for Contractual Bodily Injury Liability and Contractual Property Damage Liability, does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.
The policy defines "Completed Operations Hazard" and "Products Hazard" to be as follows:
"[C]ompleted operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) When all operations to be performed by or on behalf of the Named Insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
"[P]roducts hazard" includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.
Sandpiper contends that the exclusions in its policy are ambiguous, and that the ambiguities should be resolved in its favor. Sandpiper relies heavily on Nixon v. United States Fidelity & Guaranty Co., 290 So.2d 26 (Fla. 1973), and its progeny for support. USF&G, in turn, says that it was a party to that suit, and that the Sandpiper policy was written with the idea of removing the infirmities found by the supreme court in Nixon.
The facts in the Nixon case were as follows: Mr. Nixon, a general contractor, was sued by the parents of a small child killed by the collapse of a cinder-block wall. The wall had been built by Nixon's subcontractor. Nixon notified his insurance carrier, USF&G, of the suit, but it refused to defend. After a $15,000 judgment was obtained against Nixon, he sued USF&G for indemnification and defense costs.
Nixon's policy afforded liability coverage for accidents "arising out of the hazards" of doing business. "Hazards" were subsequently defined to be, "The ownership, maintenance or use of the premises, and all operations." (Emphasis added.) However, in another portion of the policy certain hazards *381 were excluded from coverage. The "Products  Completed Operations Hazard" was one of these exclusions. The supreme court, in a four-to-two decision, concluded that there was an ambiguity in the policy since coverage was provided for "all operations," yet coverage was excluded for the "Products  Completed Operations Hazard." This attempt at exclusion was found to be ambiguous because Nixon, who was a general contractor and not a manufacturer, could have reasonably concluded that the exclusionary clause applied only to those operations related to "products."
The USF&G policy now before the court has, we believe, significant differences from the policy in Nixon. First, there is no broad insuring clause referring to "all operations" of the insured. Rather, the insuring clause provides:
COVERAGE B  PROPERTY DAMAGE LIABILITY
The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, ...
Second, unlike the policy in Nixon, the instant policy refers to completed operations and products hazards separately, and defines them separately also. This dichotomy obviously resulted from the insurance company's perception of the rationale of the Nixon opinion, which found the exclusion relating to "Products  Completed Operations" to be confusing to the insured contractor.
Finally, the exclusionary language in the Sandpiper policy, quoted previously, does not appear to be ambiguous. We agree with the observation of the supreme court in Nixon that insurance companies should issue more concise and readable policies. But, we think USF&G has satisfactorily addressed this problem and Sandpiper should reasonably have known that it was not buying coverage for its completed operations when it purchased this policy.
Affirmed.
HOBSON, Acting C.J., SCHEB, J., and FOGLE, HARRY W., Associate Judge, concur.