ANSTEAD, Judge.
This is an appeal from a judgment finding that there was no coverage under a policy of liability insurance issued to the appellee, David Roach, by the appellee, In-tegon General Insurance Company.
In 1975 Greenway Village South Condominium Associations I, II, III, and IV hired David Roach, a contractor, to install gutters and downspouts on their buildings to facilitate drainage. Mr. Roach’s installation technique caused extensive damage to certain metal strips which sealed a portion of the mansard roofs of the buildings, and as a result the roofs lost their water-tight character and the strips had to be replaced. The proof showed that Roach’s employees actually used heavy wrecking bars to force-ably pry up the metal seals. The damage was not discovered until after Roach had finished installing the gutters.
*955 Greenway brought suit for damages against Roach and his liability insurer, In-tegon General Insurance Corp. In a non-jury trial, the trial court found Roach liable to appellants for the property damage caused to the roofs:
[T]he court is convinced from the preponderance of the evidence and the clear and convincing evidence that the manner in which these wrecking bars were used caused the leaks in all of these respective buildings.
However, Integon contended and the trial court agreed that exclusion (p) of Integon’s policy precluded any finding of its liability to Green way. Exclusion (p) provides:
This insurance does not apply ... (p) to bodily injury or property damage included with the completed operations hazard or the products hazard.
“Completed operations hazard” is earlier defined as follows:
“completed operations hazard” includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. “Operations” include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed. (Emphasis supplied).
In support of the trial court’s ruling, In-tegon relies on Sandpiper Construction Co., Inc. v. United States Fidelity & Guaranty Co., 348 So.2d 379 (Fla.2d DCA 1977).[1] In Sandpiper, the roof of a building collapsed six months after construction had been completed, and the owner sued both the contractor and the contractor’s insurer for damages. Based on an exclusionary clause identical to exclusion (p), the insurer was held not liable. Greenway, in turn, argues that the two cases are distinguishable because in Sandpiper, the actual damage, i. e., the collapse of the roof, occurred subsequent to the conclusion of the contractor’s operations, whereas here the actual damage, i. e., the damage to the metal seals, occurred during the contractor’s operations. We agree.
It is undisputed here that the damage to the appellants’ property, i. e., the damage to the metal seals, occurred before this project was completed. It is also undisputed that the only claim made against the insured was for the repair of that damage as opposed to the damage that occurred to the interior of the buildings as. a result of the extensive leaking when it rained. Accordingly, we do not believe the exclusion applies to the appellants’ claim.
By the use of the words “arising out of operations or reliance upon a representation or warranty made at any time with respect thereto” and “operations which may require further service or maintenance work, or correction, repair or replacement because of *956 any defect or deficiency,” it appears that the purpose of this exclusion was to absolve the insurer from responsibility for damage caused by defective work or breach of warranty by the insured. The exclusion would not appear to apply to actual damage caused by the insured during the course of his work, hence the limiting language “but only if the bodily injury or property damage occurs after such operations have been completed or abandoned.” This of course is consistent with the primary purpose of the policy, to provide general liability insurance for the insured for damage he causes to persons and property.
In our view the Sandpiper case represents a fairly clear example of the application of the purpose for which the exclusion was written. The roof in Sandpiper was apparently defectively constructed. In Florida a contractor is responsible for breach of warranty for defective work. Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972), affirmed 264 So.2d 419 (Fla.1972). The damage in Sandpiper, i. e., the collapse of the roof, occurred after the job was completed and the insurer was absolved of liability for damage caused by the defective work and breach of warranty. In the case at hand the insured negligently (the trial court characterized the insured’s action as “reckless and negligent”) damaged an existing structure before the project was completed. Integon’s liability insurance policy covered him for such damage absent a clear exclusion. We find no such clear exclusion in paragraph (p).
Even if we were to determine that the exclusion was ambiguous and could be construed to apply here we would still have to find coverage. Under Florida law we must construe the terms of the policy most favorable to the insured. Nixon v. United States Fidelity & Guaranty Co., 290 So.2d 26 (Fla.1973). In doing so it is obvious from the above discussion that we believe at least one reasonable construction of the policy is that the exclusion does not apply.
Accordingly, the judgment of the trial court is reversed and this cause is remanded with directions for further proceedings consistent herewith.
LETTS, C. J., and STONE, BARRY, J., Associate Judge, concur.

. The Sandpiper interpretation was followed in Prieto v. Continental Insurance Co., 358 So.2d 851 (Fla.3d DCA 1978).