**LANDRESS AUTO WRECKING COMPANY, INC., Plaintiff-Appellee,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellant.**

No. 81–7824.

United States Court of Appeals, Eleventh Circuit.

Jan. 31, 1983.

James P. Green, Mobile, Ala., for defendant-appellant.

Edward T. Hines, Brewton, Ala., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

The insurer, United States Fidelity and Guaranty Company ("USF&G"), appeals from the finding of a federal magistrate that USF&G is compelled under the terms of an insurance contract to represent the insured, Landress Auto Wrecking Company, Inc. ("Landress"), in a tort action for negligence filed against Landress by a third party. We find that the events giving rise to the insured's alleged liability fall within the unambiguous language of an exception to the policy's coverage; therefore, we reverse the finding of the magistrate and order that judgment be entered for the insurer.

## I. THE FACTS

Elliot Sharon began doing business as Landress Auto Wrecking Company in Bonifay, Florida in 1968. Landress is engaged in the purchase and dismantlement of wrecked automobiles and the sale of used auto parts. USF&G issued comprehensive liability insurance policies to Landress in May, 1969, and May, 1978. Both policies were executed in the State of Florida.

In 1969, Raymond Lowery of the Golden Motor Company in Brewton, Alabama, observed a Landress employee using a "tow dolly" to attach a disabled car to the rear of another vehicle.[1] Lowery asked Sharon where he had acquired the dolly, and Sharon agreed to obtain a similar dolly for Lowery. Sharon subsequently contacted King's Welding, the manufacturer of the original dolly, and asked the proprietor to produce a second dolly. Landress acquired the dolly for $200 and sold it to Golden Motors for $250.[2]

Golden Motor Company in turn rented the dolly to a Mr. Rodney Hawkins. On June 3, 1978, nine years after the delivery by Landress, Hawkins was towing an automobile with the dolly when the automobile disengaged from the towing vehicle and collided with another automobile. Two passengers in the other car, Matthew Livingston, an infant, and his mother, Linda Livingston, were injured.

The Livingstons filed a civil suit in Alabama state court against numerous defendants, including Landress. The complaint alleged that Landress had delivered the dolly to Golden Motor in defective condition and that this and other negligent acts of Landress were a proximate cause of the injuries suffered by the Livingstons.

USF&G declined to enter the Livingston action on behalf of Landress, and Landress filed this action seeking a declaratory judgment that USF&G has a contractual duty under the insurance policy to defend Landress and pay any judgment entered against it. The parties filed a consent to proceed before a U.S. magistrate. On August 24, 1981, the magistrate, finding that Landress' delivery of the dolly was not within an exception to the policy's coverage, ruled that USF&G was obligated to defend Landress. This judgment was affirmed by the district court. This appeal followed.

## II. APPLICABLE LAW

The parties do not dispute the magistrate's finding that this action is controlled by Florida law. Therefore, in considering the scope of the exceptions to this insurance policy, we must bear in mind the following well-established principles of Florida insurance law.

An insurance policy should be construed in its entirety, and, if reasonably possible, given the construction which re-

---

1. This tow dolly apparently consisted of a metal bar and several chains. The precise nature of the mechanism, however, is not relevant to our finding that this dolly is a "good" or "product" which was "sold" or "handled" by the insured.

2. Sharon asserts that the extra $50 merely covered the costs of delivering the dolly to Brewton, Alabama, 160 miles from Bonifay, Florida. We do not consider this contention because the question of whether Landress profited from the transaction is immaterial to this Court's holding.

flects the intent of the parties. *New York Life Insurance Co. v. Kincaid,* 136 Fla. 120, 186 So. 675, 677 (Fla.1939); *King v. Sturge,* 113 So.2d 257, 258 (Fla.App.1969). When the language of a policy is unclear or confusing, the language should be construed against the insurer. *Fireman's Fund Insurance Co. of San Francisco v. Boyd,* 45 So.2d 499, 501 (Fla.1950); *Beasley v. Wolf,* 151 So.2d 679, 680 (Fla.App.1963). However, if the language of a policy is clear and unambiguous, it should be accorded its natural meaning. *Pafford v. Standard Life Insurance Co. of Indiana,* 52 So.2d 910, 911 (Fla. 1951); *New Amsterdam Casualty Co. v. Addison,* 169 So.2d 877, 880 (Fla.App.1965). The policy of strict construction against the insurer should not be used to add meaning to clear and unambiguous language. *Rigel v. National Casualty Co.,* 76 So.2d 285, 286 (Fla.1954); *Miller Electric Co. of Florida v. Employer's Liability Insurance Corp.,* 171 So.2d 40, 43 (Fla.App.1965).

### III. THE SCOPE OF THE POLICY'S COVERAGE

#### A. *Introduction*

The insurance policy in effect at the time of the accident, No. ICC A 83775, provided comprehensive liability protection to Landress. It is undisputed, however, that Landress did not pay for and did not expect protection for either of two separate options, "Completed Operations" coverage and "Products Hazard" coverage.[3] These categories, therefore, represent exceptions to the general coverage of the policy, and if the insurer is able to show that the events preceding the injuries to Matthew and Linda Livingston fall within the plain language of either of these exceptions, USF&G is not bound to defend Landress and is entitled to a judgment in its favor.

#### B. *The Products Hazard Clause*

As mentioned, it is stipulated that Landress waived "Products Hazard" protection.

In the definitions section of the policy, "Products Hazard" is defined as

> Bodily injury and property damage arising out of the named insured's products or reliance upon a representation or a warranty made any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

The only issue regarding this portion of the insurance contract is whether the tow dolly transferred from Landress to Golden Motor Company in 1969 constituted one of the "named insured's products."

In the same section of the policy, "Named Insured's Products" is defined as

> Goods or products manufactured, sold, handled or distributed by the named insured or by others trading in his name, including any container thereof, (other than a vehicle), but "Named Insured's Products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

Therefore, the determinative question is whether this tow dolly was a "good or product manufactured, sold, handled or distributed by [Landress]."

In finding the above language ambiguous, the magistrate relied on a pair of Florida cases holding that products hazard exclusions are ambiguous as applied to an insured service company's installation of certain goods. *Miller Electric Co. v. Employer's Liability Assoc. Corp.,* 171 So.2d 40 (Fla. App.1965); *New Amsterdam Casualty Co. v. Addison,* 169 So.2d 877 (Fla.App.1964). In each of these cases, an insurer was ordered to defend an insured electrical contractor in a suit for negligent installation despite the contractor's express waiver of joint "Products-Completed Operations" cov-

---

**3.** An exclusion in the policy specifically provides:

> It is agreed that such insurance as is afforded by the bodily injury coverage and the

property damage liability coverage does not apply to bodily injury or property damage included within the completed operations hazard or the products hazard.

erage. The magistrate below concluded that Landress' transfer of the dolly to Golden Motor constituted a "service" function, thereby triggering the application of the above precedents.

We find these cases inapplicable to the situation before us. First, in the *Miller* and *New Amsterdam* cases, the Products Hazard and Completed Operations clauses were merged into a single clause entitled either "Products Hazard" or "Products-Completed Operations." It would not be unreasonable, wrote the *Miller* and *New Amsterdam* courts, for a provider of services to conclude that such a clause provided protection solely for products liability, an unnecessary insurance item for service contractors.[4] But since these clauses also provided insurance for completed operations, an item of insurance vital to an electrical contractor, the failure of the insurers to distinguish these independent lines of coverage was held to create an ambiguity in the policy that was construed against the insurer.

In response to *Miller, New Amsterdam,* and a third case, *Nixon v. United States Fidelity & Guaranty,* 290 So.2d 26 (Fla. 1973), USF&G divorced the Products Hazard and Completed Operations coverage clauses and definitions in its general liability insurance policies. In *Sandpiper Construction Co. v. United States Fidelity and Guaranty,* 348 So.2d 379 (Fla.App.1977), an action brought under the newly-worded policy by an insured building contractor seeking to compel USF&G to enter and defend the contractor against a charge of negligent construction despite the contractor's waiver of both Products Hazard and Completed Operations coverage, the Florida Court of Appeals distinguished *Nixon* and its progeny on the grounds that those cases considered a combined "Products-Completed Operations" clause.[5] The Florida court then expressly stated that the Products Hazard and Completed Operations clauses in the USF&G policy, worded identically to those in the policy before us, were not ambiguous.[6]

Moreover, we note that the insured in the present case is not a dispenser of services, but a salesman of products. Therefore, even if the Products Hazard and Completed Operations clauses were not separately listed and defined, it might reasonably be argued that a unified clause is not ambiguous as applied to a product salesman since the title of the joint clause provides adequate notice that products liability protection is contained therein. Thus, the conclusion of *Sandpiper* that these divorced clauses are not ambiguous carries extra force as applied to a seller of products.

Given the unambiguous language of the Products Hazard clause, this Court is compelled to accord the words their natural meaning. The insured's argument that the phrase "goods or products manufactured, sold, handled or distributed by the named insured" includes only items routinely sold and distributed in the ordinary course of business of the insured is unavailing. Landress acquired the dolly and then sold it to Golden Motor. The plain interpretation of these common terms compels the finding that this dolly constituted a "good" or "product" and that this good or product was "sold" or "handled" by the insured.

We therefore find that the sale of the dolly by Landress to Golden Motor fell within the unambiguous exclusionary language of the Products Hazard clause of Policy No. ICC A 83775. It follows that USF&G is not compelled to defend Landress in the civil suit for damages or to pay any liability resulting therefrom.

In light of our holding as to the Products Hazard clause, we find it unnecessary to consider questions arising under the Completed Operations clause.

---

4. The *New Amsterdam* court wrote:

We are not persuaded that the average businessman would be unreasonable or lacking in understanding in assuming that the caption phrase "Products-Completed Operations" related to the subject of products liability and that the subdivisions thereof were both germane to such subject.

169 So.2d at 885.

5. 348 So.2d at 381.

6. *Id.*

The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.