PROCESS SYSTEMS INTERNATIONAL, INC.[1] *vs.* THE
CONTINENTAL CASUALTY COMPANY.

No. 95-P-837.

Suffolk. October 18, 1996. - May 1, 1997.

Present: ARMSTRONG, DREBEN, & JACOBS, JJ.

*Insurance,* Comprehensive liability insurance, Coverage. *Words,* "Products
hazard," "Named insured's products."

An endorsement in a policy of liability insurance excluding coverage for
bodily injury arising out of the insured's products over which the insured
had relinquished possession and occurring on premises other than those
of the insured operated to bar liability coverage for injuries sustained
when a soccer goal post, one of two manufactured by the insured and
donated to and installed on a municipal playing field, fell on a child.
[562-564]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 7, 1994.

The case was heard by *Gordon L. Doerfer,* J., on motions
for summary judgment.

*Jeffrey P. Allen* for the plaintiff.

*Alice Olsen Mann* (*Hilary M. Henkind* with her) for the de-
fendant.

JACOBS, J. The plaintiff (Process Systems) sought a declara-
tory judgment that it is entitled to coverage under its policies
of insurance with the defendant (Continental). Acting on
cross motions for summary judgment, a Superior Court judge
allowed Continental's motion and denied that of Process
Systems.

The summary judgment materials before the judge indicate
that, in 1984, Process Systems donated goal posts to the Tim-
berlane Soccer League (league), which were installed in a
Plaistow, New Hampshire,[2] school playing field by members

---

[1] Formerly known as Process Engineering, Inc.

[2] The plaintiff has a manufacturing facility in Plaistow.

of the league and other volunteers. Process Systems, which, at that time, was "in the business of producing cryogenic tanks and heat exchangers," "fabricated" and "complet[ed] the manufacture of the goal posts . . . utilizing a design supplied by the [league]." In 1989, a child died from injuries sustained when one of the goal posts fell on him, and, in an action claiming negligent design and manufacture of the goal posts, a New Hampshire jury, in 1993, awarded damages of $925,000 against Process Systems, the league, and the local school district.

Process Systems claims coverage under a comprehensive general liability policy and a commercial umbrella policy issued by Continental. In seeking summary judgment, Continental asserts that the coverage under the liability policy is excluded by the terms of an endorsement stating that coverage is not available for a bodily injury which is "included within the Completed Operations Hazard or the Products Hazard."[3] The policy defines "products hazard" to include:

> "bodily injury . . . arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto but only if the bodily injury . . . occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others[.]"

The term "named insured's products" is defined as:

> "goods or products manufactured, sold, handled or distributed by the named insured . . . including any container thereof (other than a vehicle) but . . . shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold."

Essentially, Continental claims that the goal posts were a

---

[3]The umbrella policy contains a similar endorsement, and no claim is made that it calls for a different resolution than under the endorsement contained in the general liability policy. Also, no issue is raised under the "Completed Operations Hazard" exclusion, nor is it disputed that Process Systems did not purchase completed operations and products liability coverage.

"product" manufactured by Process Systems and therefore specifically excluded from coverage by the products hazard endorsement.

There is no dispute that the goal posts were manufactured by Process Systems. We conclude they fall within the definition of "named insured's products."[4] Referring to a widely cited authority, Process Systems argues that the goal posts should not be considered its product because it does not trade or deal in goal posts.[5] See Henderson, Insurance Protection for Products Liability and Completed Operations — What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 430 (1971). That same commentator acknowledges, however, that "it has been held that even a brief excursion into the stream of commerce will cause one to be classified as a manufacturer, seller, handler or distributor of goods or products regardless of how foreign this occasional venture may be to his normal activities." *Id.* at 430-431. Nothing in the wording of the products hazard exclusion suggests that a product must be one within the regular course of business of an insured. Not only does the limited, relevant authority lean away from such an interpretation,[6] but a reasonable view of the coverage scheme indicates that what would ordinarily be covered by conven-

---

[4]We are not aided by reference to conventional sources in determining whether the goal posts are a "product" because common definitions are so broad. A product is the "[g]oods produced or manufactured, either by . . . hand, or with tools [or] machinery." Black's Law Dictionary 1209 (6th ed. 1990).

[5]In support, Process Systems advances the decision in *Newell-Blais Post #443, Veterans of Foreign Wars of the United States, Inc.* v. *Shelby Mut. Ins. Co.*, 396 Mass. 633 (1986). In that case an exclusion from insurance coverage for an organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages was found not to apply to the Post as an organization incorporated for charitable purposes because it was not engaged in such a "business." *Id.* at 635-636. No issue of interpretation of the term business as an activity or as one for gain or profit is presented in this case, nor can such a consideration be read into the policy language. Compare *Landress Auto Wrecking Co.* v. *United States Fid. & Guar. Co.*, 696 F.2d 1290, 1291 n.2 (11th Cir. 1983) ("the question of . . . profit[] from the transaction is immaterial to this Court's holding").

[6]See *Landress Auto Wrecking Co.* v. *United States Fid. & Guar. Co.*, 696 F.2d at 1293 (interpreting nearly identical "unambiguous" exclusionary language and determining that a "tow dolly" was not a product within the insured's routine course of business but nevertheless "fell within the unambiguous exclusionary language of the Products Hazard clause"). See also *Smith* v. *Maryland Cas. Co.*, 246 Md. 485, 489-490 (1967) (coverage

tional products hazard insurance should not tortuously be read into general liability coverage.

Process Systems also seeks to show that, because the goal posts were donated, and not sold, they should not be considered its product, relying on the language in the definition that states that "products . . . shall not include a vending machine or any property . . . rented to or located for use of others but *not sold.*" (Emphasis supplied.) That language, however, has a special meaning in insurance practice, serving to exclude rented or leased items from products hazard coverage.[7] In any event, a plain reading of that language does not support Process Systems' contention that the goal posts should not be considered its product merely because they were not sold. The "not sold" term, in context, appears only to show that possession of such items has not been permanently relinquished. It is not disputed that Process Systems permanently relinquished possession of the goal posts before the injury occurred. Such an injury, on its face, falls within the policy's definition of a products hazard as one "arising out of the named insured's products . . . if the bodily injury . . . occurs away from [the insured's] premises . . . and after physical possession of such products has been relinquished to others." Separate coverage must be purchased for such liability.[8]

Process Systems' remaining contention concerns whether

for injury caused by slingshot purchased at annual church bazaar excluded by products-completed operations clause, found to be applicable whether sale is incidental or a substantial part of whatever business carried on by insured); *Westman Industrial Co.* v. *Hartford Ins. Group,* 51 Wash. App. 72, 79 (1988) (property damage caused by airborne pieces of a boathouse was of the type covered by products hazard insurance and exclusion applied although boathouse was a product outside of insured's ordinary course of business).

[7]"Thus, even though the courts have held that persons engaged in the equipment rental or leasing business are subject to products liability actions, the products hazard coverage is not what such a person should purchase for protection." Henderson, *supra* at 432. See also *Sun Ins. Co.* v. *Hamanne,* 113 N.H. 319, 322 (1973); *Insurance Co. of North America* v. *Electronic Purification Co.,* 67 Cal. 2d 679, 681, 686-686 (1967) (products hazard exclusion does not apply to a product rented, but not sold; rented products determined to fall within the general coverage).

[8]"Products liability insurance covers liability for damages imposed by law upon the insured because of accidental bodily injuries resulting from defects in goods or products manufactured, sold, handled, or distributed by the insured." 3 Long, Law of Liability Insurance § 11.01, at 11-3 (1990 &

the act of donating the goal posts constitutes the disposition of a product within the meaning of "manufactured, sold, handled or distributed." Because Process Systems manufactured the goal posts, thereby coming within the controlling definitional clause, we think it unnecessary to consider whether donation might suggest a different outcome between an insured and its insurer in other circumstances.

On this record, we conclude, as matter of law, that a reasonable reading of the clauses at issue supports the summary judgment that was entered for Continental. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). The judgment is affirmed. Because the declaratory judgment requested by Process Systems was not issued, we remand for the entry of a declaration consistent with this opinion.

*So ordered.*

Supp. 1996). Henderson, *supra* at 428, suggests that products hazards provisions are given a broad construction so as to cover "any injury caused in fact by a product manufactured, sold, handled or distributed by the insured," essentially because the provision "should not be limited to certain classes of transactions involving the insured and his products, but should be extended to all hazards related to an insured's products which actually cause injuries away from the insured's premises and after possession of the products is relinquished by him." *Id.* at 429.

"It is essential to separate those risks covered by premises liability insurance from those covered by products liability coverage. These coverages are mutually exclusive: the definition of products hazard contemplates the product being off the insured's premises when the occurrence takes place." Long, *supra* at 11-17.